**2016 UT App 146**

# THE UTAH COURT OF APPEALS

DIANE J. THAYER,
Appellant,
*v.*
RICHARD W. THAYER,
Appellee.

Opinion
No. 20140179-CA
Filed July 14, 2016

Fourth District Court, Provo Department
The Honorable Fred D. Howard
The Honorable Samuel D. McVey
No. 124401228

Paige Bigelow, Attorney for Appellant

Douglas B. Thayer and Jordan K. Cameron,
Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE J.
FREDERIC VOROS JR. and SENIOR JUDGE RUSSELL W. BENCH
concurred.[1]

ROTH, Judge:

¶1      Diane J. Thayer (Wife) appeals the district court's order regarding the division of Richard W. Thayer's (Husband) retirement pay. We reverse and remand for further proceedings.

---

1. Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

BACKGROUND

¶2    Husband and Wife married in April 1978. The parties' stipulated decree of divorce was entered in September 2013. During the marriage, both parties earned retirement pay through their employers. Wife has a pension plan through her employment as a teacher in Alaska and should become eligible in the future to receive a pension from her employment as a teacher in Utah. Husband has a pension plan through his employment with the United States Public Health Service Commissioned Corps (USPHS).

I. The Divorce Decree

¶3    At the time of the divorce, Wife was "not yet receiving payments from the Alaska Teacher Pension," and accordingly, the decree stipulated that the "monthly compensation . . . of the Alaska Teacher Pension should be divided equally between [Husband and Wife]." The decree defined "monthly compensation" as "gross retirement pay less authorized deductions, including amounts properly deducted for federal, state, or local taxes and disability benefits." The parties stipulated to identical language regarding the portion of Wife's Utah teacher pension to be equally divided, if she becomes eligible to receive a pension.

¶4    With respect to Husband's pension through USPHS, the stipulated decree provided,

> All of [Husband's] years of employment with USPHS accrued during the marriage, and [Husband] is currently receiving the payments of the retirement benefits from the USPHS Pension. The "disposable retired pay" amount of the USPHS pension benefit shall be divided equally pursuant

to *Johnson v. Johnson*, 2012 UT App 22[,] and 10 U.S.C.A. § 104(a)(4)(C).[2] "Disposable retired pay" is defined as gross retirement pay less authorized deductions, including amounts properly deducted for federal, state, or local taxes and disability benefits.

Commencing with the June 2013 pension compensation, [Wife] is awarded fifty-percent (50%) of the disposable retired pay. The U.S. Office of Personnel will calculate the "disposable retired pay" per existing regulations, and both parties will be responsible for reporting their complete income and paying taxes on their income. Neither party assumes liability for the other party's tax obligation. The United States Office of Personnel Management is directed to pay [Wife's] share directly to [Wife].

¶5     Anticipating the possibility of delays in implementing the payment plan with USPHS, the decree also provided an interim payment mechanism:

Commencing with the June 2013, pension compensation, until the time that the division of the USPHS Pension is implemented, [Husband]

---

2. The reference to section 104(a)(4)(C) of the Uniformed Services Former Spouses' Protection Act (the USFSPA) in the stipulated decree appears to be a typographical error, as the section number of the USFSPA is 1408, not 104. Indeed, it appears that section 104 of title 10 in the United States Code does not exist. As neither party contests the applicability of the USFSPA to the division of Husband's retirement pay, we refer to section 1408, not 104, from this point forward.

shall pay [Wife] the monthly sum of $2,389.93. Payment shall be due within ten (10) days of [Husband] receiving any retirement distribution. [Husband] shall not pay [Wife] directly once the plan administrator implements the division of the USPHS Pension.

A.     Wife's Pensions

¶6     Following the entry of the divorce decree, Husband proposed a qualified domestic relations order that would require the plan administrator to pay Husband one half of each of Wife's gross pension payments. Wife objected, contending that the decree defined the amount to be paid to Husband as "gross retirement pay less authorized deductions," such as taxes and disability, and that only her net payments should be subject to division. Husband responded that there were no "authorized deductions" from her pay under applicable law. In particular, he argued that Wife was not disabled and that both Alaska's and Utah's retirement systems are required by law to divide pension payments prior to tax deductions.

¶7     The district court sided with Husband, ruling that "the divisible amount is [Wife's] 'gross retirement pay.'" The court reasoned that "the decree of divorce identified *possible* deductions (for example, taxes and disability benefits) that may be made before the division of the retirement benefit, so long as those deductions are authorized." (Emphasis in original.) However, the court determined that "there are no authorized deductions that may be taken before the assets are divided between the parties." In particular, it found that neither the Alaska nor the Utah retirement systems "permit[ted] the tax deductions prior to the division of gross retirement pay" and that Wife "does not receive disability benefits that would be available for deductions." Neither party contests this ruling on appeal.

B.      Husband's Pension

¶8      Wife submitted to the Personnel Center in charge of administering Husband's pension a request that she be paid monthly the portion of Husband's retirement pay awarded to her in the decree. In December 2013, the Personnel Center advised Wife that "[a]bsent a successful objection from your former spouse . . . , your direct payment will begin on February 1, 2014." The Personnel Center estimated that she would receive each month the sum of $3,455.02, which was fifty percent of Husband's "disposable retired pay," as calculated by the Personnel Center.

¶9      However, in January 2014, Husband objected to the Personnel Center's proposed division of his retired pay. Husband asserted that the Personnel Center's proposal was not consistent with the decree of divorce because the proposed payout to Wife did not calculate Husband's disposable retired pay according to *Johnson* and 10 U.S.C. section 1408(a)(4)(C) of the Uniformed Services Former Spouses' Protection Act (the USFSPA), as the decree required. He argued that *Johnson* and the statute required that federal, state, and local taxes and disability benefits be subtracted to arrive at his disposable retired pay and that the Personnel Center's proposed calculation instead improperly divided his gross pay.

¶10      As a result of Husband's objection, the Personnel Center notified Wife that it "disapprove[d] [her] request for division of [Husband's] retired pay." It explained to Wife that *Johnson*, the case the divorce decree referenced as a guide for the division of Husband's retirement pay and a source for the definition of "disposable retired pay," "cite[d] federal law as it existed prior to 1990 and not as it exists today" and that under current federal law, while "[d]isability payments are excluded," "[t]axes are not excluded from gross retired pay to arrive at disposable retired pay." The Personnel Center noted, as well, that its

"implementing regulations . . . also contain the definition of disposable retired pay" and that under that definition, "[t]axes are not excluded for divorces that occurred on or after February 3, 1991." As a consequence, the Personnel Center disapproved Wife's request "[b]ecause of the conflict between [the] Decree and [current federal law], and based on [Husband's] objection to [the Personnel Center's] proposed implementation."

¶11  Wife then submitted a proposed military retired pay division order that provided that she be "awarded fifty percent (50%) of [Husband's] disposable military retired pay." Husband objected—this time to the district court—on the same ground that he had objected to the Personnel Center's proposed division, namely, that Wife's proposal did not incorporate the stipulation in the divorce decree that Husband's disposable retired pay be "divided equally pursuant to *Johnson v. Johnson*, 2012 UT App 22[,] and 10 U.S.C.A. § [1408](a)(4)(C)." In this regard, he argued that the court in *Johnson* "defined the 'authorized' deductions for a military pension as federal and state taxes and held that it was not authorized to 'treat gross [military] retirement pay as marital property divisible upon divorce.'" (Alteration in original) (quoting *Johnson v. Johnson*, 2012 UT App 22, ¶ 23, 270 P.3d 556, *aff'd in part, rev'd in part*, 2014 UT 21, 330 P.3d 704). As a result, according to Husband, "Utah Courts only have authority to divide [his] net retirement income" and the Personnel Center's proposed disbursal of $3,455.02 per month to Wife was "actually 50% of [Husband's] gross retirement pay," not fifty percent of his net pay. He asserted that even if the division the parties had agreed upon was inconsistent with current federal law or the Personnel Center's implementing regulations, the parties had "specifically recognized, discussed, and agreed to the applicability of *Johnson* to [Husband's] military retirement account" and that "*Johnson* cannot . . . be arbitrarily removed from the Decree." Husband further argued that the decree itself "provides for the remedy" in the event that the Personnel Center could not implement the division, in the form of the $2,389.93

per month designated as the interim payment Husband was to make "until the time that the division of the USPHS Pension is implemented."

¶12    In response, Wife argued that *Johnson* does not stand for the proposition that military retirement income may only be divided net of tax deductions. Rather, she pointed out, as had the Personnel Center, that *Johnson* involved a pre-1991 divorce and applied a federal statute and regulations "which at the time did deduct taxes prior to division." She argued that rather than adopting a specific formula, *Johnson* "stands for the proposition that Utah law cannot order a division of Federal retirement that *exceeds* federal regulations." Thus, the Personnel Center's original proposed division of Husband's retired pay was "in keeping with *Johnson*" because it had "calculated the division of the USPHS Pension per existing Federal regulations."

¶13    The district court sustained Husband's objection, stating that it was "persuaded by the arguments and authorities of [Husband] on the subject and adopts and incorporates them." The court directed Husband to "prepare an order consistent" with its ruling. Husband submitted his proposed order, and after Wife objected and a hearing was held, the court entered its final order affirming that Husband's retirement pay should be divided "pursuant to *Johnson v. Johnson*, 2012 UT App 22[,] and 10 U.S.C.A. § [1408](a)(4)(C)," as provided in the decree. In reaching this decision, the court interpreted *Johnson* as Husband had urged—ruling that the case had definitively established federal and state taxes as "authorized" deductions from federal retirement pay and thus barred the court from treating Husband's *gross* retirement pay as "'marital property divisible upon divorce.'" (Quoting *Johnson*, 2012 UT App 22, ¶ 23.) The court noted that the parties had "specifically recognized and agreed to the applicability of the pension division language in *Johnson* to [Husband's] USPHS Pension" and that, consequently,

it "only ha[d] authority to order the division of the net amount of [Husband's] USPHS Pension."

¶14 Wife appeals from this order.

ISSUES AND STANDARDS OF REVIEW

¶15 Wife argues, first, that the district court incorrectly interpreted *Johnson v. Johnson*, 2012 UT App 22, 270 P.3d 556, *aff'd in part, rev'd in part*, 2014 UT 21, 330 P.3d 704, as mandating that Utah courts divide federal pensions on a net basis, and second, that the district court incorrectly interpreted portions of the parties' divorce decree. We review interpretations of case law for correctness. *See Daniels v. Gamma West Brachytherapy, LLC*, 2009 UT 66, ¶ 46, 221 P.3d 256; *see also Gardner v. Gardner*, 2012 UT App 374, ¶ 14, 294 P.3d 600 (interpreting a decree of divorce for correctness).

¶16 Wife also argues that she is entitled to an award of attorney fees incurred by enforcing the provisions of the decree both below and on appeal, pursuant to section 30-3-3(2) of the Utah Code. Section 30-3-3(2) permits a court to award attorney fees related to "any action to enforce . . . division of property in a domestic case," "in its discretion," so long as the party seeking an award of fees "substantially prevailed upon the claim or defense." Utah Code Ann. § 30-3-3(2) (LexisNexis 2013). *See generally Connell v. Connell*, 2010 UT App 139, ¶¶ 27–32, 233 P.3d 836.

ANALYSIS

¶17 Husband and Wife entered into a stipulated divorce decree. We have recognized that even in the context of a divorce, parties are generally bound by their stipulations. *See Bayles v. Bayles*, 1999 UT App 128, ¶ 15, 981 P.2d 403 ("Stipulations

entered into in contemplation of a divorce 'are conclusive and binding on the parties unless, upon timely notice and for good cause shown, relief is granted therefrom.'" (quoting *Maxwell v. Maxwell*, 796 P.2d 403, 406 (Utah Ct. App. 1990))). We have also previously held that parties may be bound to the stipulations they enter into regarding division of military retirement pay. *See Maxwell*, 796 P.2d at 406–07. Accordingly, we interpret the parties' decree "according to established rules of contract interpretation." *Mitchell v. Mitchell*, 2011 UT App 41, ¶ 5, 248 P.3d 65 (citation and internal quotation marks omitted).

> The underlying purpose in . . . interpreting a contract is to ascertain the intentions of the parties to the contract. To ascertain the parties' intentions, we look to the plain meaning of the contractual language, and we consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none."

*Osguthorpe v. Wolf Mountain Resorts, LC*, 2013 UT 12, ¶ 10, 322 P.3d 620 (second omission in original) (citations and internal quotation marks omitted). Nevertheless, "[t]he overriding consideration [in divorce proceedings] is that the ultimate division be equitable—that property be fairly divided between the parties"—and as a result, "the ability of parties to contract is constrained to some extent" by principles of equity. *See Granger v. Granger*, 2016 UT App 117, ¶ 15 (first alteration in original) (citation and internal quotation marks omitted).

¶18    The parties in this case stipulated that Husband's military retirement pay was to be "divided equally pursuant to *Johnson v. Johnson*, 2012 UT App 22[,] and 10 U.S.C.A. § [1408](a)(4)(C)." The base amount to be divided was the "disposable retired pay," which the parties defined "as gross retirement pay less

authorized deductions, including amounts properly deducted for federal, state, or local taxes and disability benefits."

¶19    Husband and Wife disagree about the district court's justification for ordering that Husband's retirement pay be divided on a net basis. Wife argues that the district court's interpretation of the decree is necessarily dependent on its interpretation of *Johnson*; because the district court determined that *Johnson* stood for the proposition that a state court is authorized to divide military retirement pay only on a net basis, it interpreted the decree to include the same limitation. Husband, on the other hand, argues that the district court did not interpret *Johnson* at all. Instead, he argues that the parties themselves interpreted *Johnson* by incorporating it into the decree and that by doing so, the parties "adopted the express definition of 'disposable retired pay' set forth in *Johnson*," which he characterizes as requiring division of disposable retired pay on a net basis. Thus, he contends that the district court merely adopted the interpretation to which the parties themselves had agreed.

¶20    We conclude that the district court incorrectly interpreted the decree to require that Husband's retirement pay be divided on a net basis. First, we conclude that the district court incorrectly interpreted *Johnson* as mandating that military retirement pay be divided on a net basis.[3] *Johnson* stands for an

---

3. Although, as discussed above, Husband argues that the district court did not interpret *Johnson* at all, the district court's final order does not support this contention. The court focused its analysis of how the decree was meant to divide Husband's pension payments on language in the pension provision stating that the pension was to be "divided equally pursuant to *Johnson v. Johnson* . . . and . . . section [1408](a)(4)(C)." And the court's ultimate determination that Wife was entitled to one half of each

(continued…)

approach to dividing military retirement pay based on the USFSPA's definition of "disposable retired pay" in force at the time of the award rather than on the specific mathematical calculation of that division *Johnson* applied in the particular circumstances of that case. *See* 10 U.S.C. § 1408(a)(4) (2012). Next, we conclude that the parties' agreement as a whole requires that Husband's retirement pay be divided according to the USFSPA's current definition of "disposable retired pay," which does not authorize deductions for taxes.

## I. District Court's Decision Regarding Military Retirement Pay Division

¶21 The parties have presented competing interpretations of *Johnson* on appeal—one that comports with the version of the USFSPA applicable when their decree was entered and one that does not. When the parties' decree was entered, the USFSPA's definition of "disposable retired pay" did not permit deductions for federal, state, or local taxes;[4] however, the divorce decree in

---

(…continued)

net payment, not gross, was explicitly based on the court's interpretation of that case: "*Johnson* defines the 'authorized' deductions for military pension as federal and state taxes and holds that the Court is not authorized to 'treat gross [military] retirement pay as marital property divisible upon divorce.'" (Alteration in original) (quoting *Johnson v. Johnson*, 2012 UT App 22, ¶ 23, 270 P.3d 556, *aff'd in part, rev'd in part*, 2014 UT 21, 330 P.3d 704).

4. At the time the parties' decree was entered, disposable retired pay was defined as follows:

> (4) The term "disposable retired pay" means the total monthly retired pay to which a member is entitled less amounts which –

(continued…)

*Johnson* was entered in 1984, and at that time, the USFSPA's definition of "disposable retired pay" required deduction of federal, state, and local taxes prior to division.[5] *Compare*

---

(…continued)

    (A) are owed by that member to the United States for previous overpayments of retired pay and for recoupments required by law resulting from entitlement to retired pay;

    (B) are deducted from the retired pay of such member as a result of forfeitures of retired pay ordered by a court-martial or as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38;

    (C) in the case of a member entitled to retired pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired (or the date on which the member's name was placed on the temporary disability retired list); or

    (D) are deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse to whom payment of a portion of such member's retired pay is being made pursuant to a court order under this section.

10 U.S.C. § 1408(a)(4) (2012).

5. By contrast, "disposable retired pay" in 1984 was defined as follows:

    (4) 'Disposable retired or retainer pay' means *the total monthly retired or retainer pay to which a member is entitled* (other than the retired pay of a member

(continued…)

(…continued)

retired for disability under chapter 61 of this title) *less amounts which—*

(A) are owed by that member to the United States;

(B) are required by law to be and are deducted from the retired or retainer pay of such member, including fines and forfeitures ordered by courts-martial, Federal employment taxes, and amounts waived in order to receive compensation under title 5 or title 38;

(C) *are properly withheld for Federal, State, or local income tax purposes*, if the withholding of such amounts is authorized or required by law and to the extent such amounts withheld are not greater than would be authorized if such member claimed all dependents to which he was entitled;

(D) are withheld under section 3402(i) of the Internal Revenue Code of 1954 (26 U.S.C. 3402(i)) if such member presents evidence of a tax obligation which supports such withholding;

(E) are deducted as Government life insurance premiums (not including amounts deducted for supplemental coverage); or

(F) are deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse to whom payment of a portion of such member's retired or retainer pay is being made pursuant to a court order under this section.

Uniformed Services Former Spouses' Protection Act, Pub. L. No. 97-252, § 1408(a)(4), 96 Stat. 730, 730–31 (1982) (emphasis added),

(continued…)

Uniformed Services Former Spouses' Protection Act, Pub. L. No. 97-252, § 1408(a)(4)(C), 96 Stat. 730, 730–31 (1982) (providing that disposable retired pay "means the total monthly retired or retainer pay to which a member is entitled . . . less amounts which . . . are properly withheld for Federal, State, or local income tax purposes"), *with* 10 U.S.C. § 1408(a)(4) (2012) (defining "disposable retired pay" without an authorized deduction for federal, state and local taxes). Wife argues that in *Johnson* we held that "state courts must comply with the federal mandate in dividing retirement benefits governed by [the] USFSPA and, in particular, [that] state courts are bound by the definition of 'disposable retired pay' set forth in [the] USFSPA." She asserts that *Johnson* merely applied the definition of "disposable retired pay" in the statute at the time and that *Johnson*'s holding did not amount to "an absolute prohibition against" the calculation of the marital share based on "gross retirement pay."

¶22    Husband counters that the parties incorporated the exact calculation of disposable retired pay that was applicable in *Johnson*—gross retirement pay net of state and federal taxes—in their own agreement, regardless of the fact that *Johnson*'s definition of disposable retired pay no longer accords with federal law, which now does not authorize a deduction for state or federal taxes. He argues that the fact that *Johnson* applied an older version of title 10, section 1408 of the United States Code "is immaterial" because the parties' decree adopted the express definition of "disposable retired pay" set forth in *Johnson* and thus calculated the division on a net basis. Husband then characterizes the decree as requiring that his pension be divided according to *Johnson* and the USFSPA conjunctively, which,

---

(…continued)
https://www.gpo.gov/fdsys/pkg/STATUTE-96/pdf/STATUTE-96-Pg718.pdf [https://perma.cc/TD9F-EK4M].

according to him, means that the disposable retired pay calculation retains the older statute's net-of-taxes concept as recognized in *Johnson*, while importing from the current version of the statute only the "express deduction for disability benefits." In other words, Husband claims he is entitled to a liberal interpretation of the USFSPA that incorporates portions of both the original and the amended version because the parties agreed to that result.

¶23   We agree with Wife. We begin our analysis with a discussion of pertinent cases that preceded *Johnson* to provide context, and we then discuss *Johnson* itself. Finally, we consider the parties' agreement as set out in their decree of divorce.

A.     Federal Case Law Before *Johnson*

¶24   Before *Johnson*, the United States Supreme Court had decided two important cases related to the division of military retirement pay that bear on our interpretation of *Johnson*— *McCarty v. McCarty*, 453 U.S. 210 (1981), and *Mansell v. Mansell*, 490 U.S. 581 (1989). In *McCarty*, a couple divorced in California, and the husband challenged the state court's decision to divide his military retirement pay according to California's community property laws. 453 U.S. at 218. At the time, federal law provided that "[a] regular or reserve commissioned officer of the United States Army who retires after 20 years of service is entitled to retired pay" and characterized the entitlement as accruing only to the retiree. *Id.* at 211–12, 232. As a result, the United States Supreme Court held that federal law "preclude[d] a state court from dividing military nondisability retired pay pursuant to state community property laws," because such an intrusion by the state "injure[d] the objectives of the federal program." *Id.* at 221, 227, 231–35. While the Court "recognize[d] that the plight of an ex-spouse of a retired service member is often a serious one," *id.* at 235, it noted that "in no area has the Court accorded Congress greater deference than in the conduct and control of

military affairs," *id.* at 236. Accordingly, the Court left it to Congress to address any hardship on the military spouse arising from the retired pay restriction. *Id.*

¶25   In response to *McCarty*, Congress enacted the USFSPA. Pub. L. No. 97-252, 96 Stat. 730 (1982). Section 1408 of the USFSPA authorized state courts to treat a divorcing spouse's military retired pay as divisible marital property, but only that portion it specifically defined as "disposable retired pay." *Id.*; *see also Toone v. Toone*, 952 P.2d 112, 113–14 (Utah Ct. App. 1998) (discussing the holding in *McCarty* and the subsequent enactment of the USFSPA). Seven years later, the Supreme Court decided *Mansell*, where it addressed the question of whether, by enacting the USFSPA, Congress "reject[ed] . . . *McCarty*'s holding that state law is pre-empted . . . [and] restor[ed] to state courts all pre-*McCarty* authority" or, instead, whether the USFSPA was "only a partial rejection of the *McCarty* rule that federal law preempts state law regarding military retirement pay." *Mansell*, 490 U.S. at 588. The Court determined that while the USFSPA "affirmatively grants state courts the power to divide military retirement pay, . . . its language is both precise and limited." *Id.* The Court concluded that although "state courts have been granted the authority to treat *disposable retired pay* as community property[,] they have not been granted the authority to treat *total retired pay* as community property." *Id.* at 589 (emphases added). Rather, by providing that only "disposable retired or retainer pay," as defined in the statute, could be divided as community property, Congress intended to narrow the prior statute's complete preemption on the authority of state courts to make orders regarding division of military retirement pay but not to eliminate it entirely.

¶26   In sum, a state court purporting to treat military retirement pay as divisible marital property must follow federal law in doing so. *See id.* ("Thus, under the [USFSPA's] plain and precise language, state courts have been granted the authority to

treat disposable retired pay as community property; they have not been granted the authority to treat total retired pay as community property."). And federal law permits a state court to divide only the portion of the military retirement pay designated by the USFSPA as disposable retired pay, which it defines in "both [a] precise and limited" way. *Id.* at 588. Thus, while a state court has authority to order division of a party's disposable retired pay in a divorce proceeding, it does not have authority to depart from the "precise and limited" definition of disposable retired pay provided in the USFSPA when doing so.

¶27   *Mansell*'s holding is significant to our analysis of the present case for two reasons. First, it established that federal law imposes certain limits on the authority of a state court to designate military retirement pay as marital property and divide it between the spouses. Second, it held that, in order to comply with federal law when dividing an ex-spouse's disposable retired pay, a state court must hew to the USFSPA's definition of that term; in other words, disposable retired pay in the context of military retirement pay is a specialized term that carries the distinct meaning Congress has ascribed to it.

B.   *Johnson v. Johnson*

¶28   Before *Johnson v. Johnson*, 2012 UT App 22, 270 P.3d 556, *aff'd in part, rev'd in part*, 2014 UT 21, 330 P.3d 704, we applied *Mansell*'s holding in *Maxwell v. Maxwell*, 796 P.2d 403 (Utah Ct. App. 1990). In *Maxwell*, the husband challenged the trial court's enforcement of a stipulated provision in the parties' divorce decree that awarded to the wife half of the total military retirement benefits the husband accrued during the parties' marriage. *Id.* at 404. Although we affirmed on other grounds, we noted that *Mansell* "did not restore authority to states to determine questions of divisibility as to all types of military pay." *Id.* at 405. Instead, "*Mansell* concluded that the [USFSPA] only granted state courts discretion to divide disposable retired

pay," which the USFSPA defined as "gross retirement pay less authorized deductions, including amounts properly deducted for federal, state, or local taxes." *Id.* (citations and internal quotation marks omitted). We held that "it is clear that under *Mansell* . . . [the] USFSPA does not authorize state courts to treat gross retirement pay as marital property divisible upon divorce." *Id.* at 405–06. Thus, at the time *Johnson* was decided, we had already acknowledged that federal law carefully prescribes a state court's authority to divide military retirement benefits in a divorce proceeding.

¶29 *Johnson* required us to construe the application of the USFSPA to the division of military pension benefits in the context of a 1984 divorce decree. *See Johnson*, 2012 UT App 22, ¶ 2. At the time of the decree, the husband was still on active service, and the decree awarded the wife half of the husband's future military retirement pay. *Id.* Over twenty years later, the husband had retired from the military and the parties asked the trial court to resolve their dispute over the specifics of how the pension benefits for which husband had now become eligible were to be divided. *Id.* ¶¶ 4–5. The court calculated the wife's share "based on [the husband's] gross monthly retirement benefit without first deducting federal, state, and local taxes." *Id.* ¶ 5. The husband challenged this calculation, arguing that the USFSPA's definition of disposable retired pay required that taxes be deducted before allocating to the wife her portion. *Id.* ¶ 7. We agreed with the husband and reversed the trial court's ruling, remanding for the "the [trial] court to recalculate [the wife's] portion of the retirement benefit" by applying any authorized deductions, including taxes. *Id.* ¶ 23.

¶30 In resolving this issue, we reiterated *Mansell*'s holding that a state court may only treat the disposable retired pay portion of a military retirement pension as divisible property in accordance with the USFSPA. *Id.* ¶ 22. We then referred to the USFSPA's definition of "disposable retired pay" to determine

whether the trial court's order comported with the USFSPA. *Id.* We noted that the USFSPA specifically defined "'disposable retired pay'" to require certain "'authorized deductions'" before division of the pension and that those deductions included "'amounts properly deducted for federal, state, or local taxes.'" *Id.* (quoting *Maxwell*, 796 P.2d at 405). As a consequence, we reversed the trial court's order because it provided for division of the husband's monthly pension benefit without first making the deductions required by the USFSPA, and we remanded for the court to recalculate the wife's portion net of those deductions. *Id.* ¶ 23.

¶31 Thus, in *Johnson*, we ultimately reversed because the trial court had ordered a division of the husband's military retirement benefits that did not take into account the "authorized deductions" required by the USFSPA, which at the time included federal, state, and local taxes. However, contrary to Husband's arguments in the present case, we did not delineate or mandate any precise calculation of disposable retired pay. We did not, for example, hold that the USFSPA requires that divisions of military retirement pay must be calculated net of taxes. Rather, we simply held that the USFSPA defined "disposable retired pay" as "gross retirement pay less authorized deductions" and that the trial court had failed to hew to requirements of the USFSPA when it purported to divide the husband's gross military retirement pay as marital property without including the authorized deductions the USFSPA specified. *Id.* Indeed, we remanded for the trial court to determine the wife's specific portion by calculating it according to the requirements of the USFSPA; we did not provide the court any specific calculation for the division, list the exact deductions the USFSPA had "authorized," or suggest that it is inherently proper under the USFSPA to always deduct taxes from the gross retirement benefit. *See id.*

¶32    As a result, *Johnson* does not stand for any particular mathematical calculation of military retired pay, as Husband urges and as the district court determined here. Instead, *Johnson* stands for the general principle that when dividing military retirement pay as marital property, district courts must apply the precise definition of "disposable retired pay" found in the applicable version of the USFSPA, including "authorized" deductions, when calculating an ex-spouse's portion and making a division order. Because the *Johnson* court applied the version of the USFSPA in effect at the time of the parties' divorce,[6] it used the definition of "disposable retired pay" that was then in force. But that did not fix that specific formula as the basis for calculating disposable retired pay forevermore; rather, the formula is determined by the applicable version of federal law, and the USFSPA has been amended significantly since the circumstances *Johnson* addressed. *See supra* ¶ 21 notes 4 and 5. Thus, we conclude that the parties' inclusion of *Johnson* in their stipulated decree does not itself require that Husband's retirement benefits be divided on a net basis.

## II. The Parties' Decree

¶33    Our conclusion regarding *Johnson* does not completely resolve the dispute between the parties, however. The parties' central disagreement is whether they intended that Wife be

---

6. The issue of which version of the USFSPA was applicable—whether the version in effect at the time of divorce or at the time of retirement—was not addressed in *Johnson*. Rather, the court viewed the USFSPA through the lens of *Maxwell*, quoting not the text of the USFSPA itself, but *Maxwell*'s recitation of the text of the USFSPA. The *Johnson* opinion gives no indication that the court knowingly selected one version of the USFSPA over another or was even aware that the USFSPA had been amended after *Maxwell* was decided.

awarded one half of an amount different from (and less than) Husband's disposable retired pay as currently defined by the USFSPA, that is, an equal portion of Husband's net retirement benefit rather than an equal portion before deduction of taxes as the current version of the USFSPA provides. At the time the parties' decree was entered, the USFSPA did not authorize deductions for taxes prior to division of disposable retired pay (and had not authorized such deductions for over twenty years). *See supra* ¶ 21 notes 4 and 5. Further, as it had from its inception, the USFSPA provided "a direct payment mechanism which authorize[d] the appropriate military financial center to pay directly to former military spouses who qualify under the [USFSPA], the court ordered apportioned share of a former spouse's retirement benefits." *See Maxwell*, 796 P.2d at 405; *see also* 10 U.S.C. § 1408(d)(1) (2012). This mechanism permitted the appropriate federal financial center to "make payments (subject to the limitations of this section) from the disposable retired pay of the member to the spouse or former spouse," but only "in an amount sufficient to satisfy . . . the amount of disposable retired pay specifically provided for in the court order." *See* 10 U.S.C. § 1408(d)(1). The USFSPA also specified that "[t]he total amount of the disposable retired pay of a member payable under all court orders pursuant to subsection (c) may not exceed 50 percent of such disposable retired pay." *See id.* § 1408(e)(1).

¶34    Based on the decree's pension provisions as a whole, we conclude that the parties intended that Wife receive half of Husband's disposable retired pay as defined under the current version of the USFSPA and that the district court should have divided Husband's retirement pay accordingly, rather than on a net basis. *See Lee v. Barnes*, 1999 UT App 126, ¶ 11, 977 P.2d 550 (explaining that "[c]ontracts should be read as a whole, in an attempt to harmonize and give effect to all of the contract provisions" (citation and internal quotation marks omitted)).

¶35 Here, the parties themselves characterized as marital property the exact portion of Husband's retirement benefit that the USFSPA has designated as divisible by state courts—the disposable retired pay. *See* 10 U.S.C. § 1408(c)(1) ("Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."); *accord Maxwell*, 796 P.2d at 405. Husband and Wife agreed that Husband's military retirement pay was marital property to be equally divided and that the portion of Husband's military retirement benefit to be "divided equally" was the disposable retired pay itself: Wife was to be awarded "fifty-percent (50%) of the disposable retired pay." They then defined "disposable retired pay" as "gross retirement pay less authorized deductions, including amounts properly deducted for federal, state, or local taxes and disability benefits." Under the current version of the USFSPA, however, taxes are not "properly deducted" from gross retirement pay. The question arises then whether, as Husband asserts, the decree's language indicates the parties' intent to depart from the applicable definition of disposable retired pay as the basis for Wife's share of Husband's military retirement pay and award her an equal share of net rather than gross pay. A reasonable interpretation of the provision as a whole does not support such an approach.

¶36 First, the parties seem to have included the reference to *Johnson* in this provision, as well as *Johnson*'s characterization of disposable retired pay, as a source of guidance on the meaning and application of that term without understanding that *Johnson* ultimately applied a definition of disposable retired pay that had not been in force for decades. *Johnson*, as discussed above, did not itself "define" the authorized deductions in a particular way. Instead, the decision is properly read to mean that a state court's division of military retirement pay must conform to the USFSPA's requirements, including the definition of "disposable

retired pay" and its proper and authorized deductions. *See supra* ¶¶ 28–32. As a result, the inclusion of a reference to *Johnson* in the decree, rather than enshrining a specific definition of disposable retired pay, seems more reasonably interpreted as a commitment to look to the applicable version of the USFSPA to determine which specific deductions are authorized and then calculate Wife's share accordingly. *See McNeil Eng'g & Land Surveying, LLC v. Bennett*, 2011 UT App 423, ¶ 17, 268 P.3d 854 (explaining that a "[contract] interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect" (citation and internal quotation marks omitted)); *cf. Munford v. Lee Servicing Co.*, 2000 UT App 108, ¶ 18, 999 P.2d 23 ("Provisions which are apparently conflicting are to be reconciled and harmonized, if possible, by reasonable interpretation so that the entire agreement can be given effect." (citation and internal quotation marks omitted)). Put another way, nothing in *Johnson* or the parties' decree suggests that in incorporating the term "disposable retired pay" in their stipulation, the parties intended to define that term in a manner inconsistent with current federal law. Thus, the reference in their decree to *Johnson*, accompanied by a reference to the USFSPA itself, is reasonably interpreted as a way (albeit somewhat ineffective) of expressing the parties' intent to divide Husband's retirement pay as the USFSPA required, not as a commitment to apply the obsolete definition of disposable retired pay utilized in *Johnson* in preference to the definition applicable at the time of the parties' stipulation.

¶37    Second, the parties agreed that Wife was to receive her portion of Husband's pension in accordance with the exact disbursal mechanism provided by the USFSPA, a mechanism that depended on the USFSPA's then-current definition of disposable retired pay. The decree provided that "[c]ommencing with the June 2013, pension compensation, [Wife] is awarded fifty-percent (50%) of the disposable retired pay" and directed

the Personnel Center to both "calculate the 'disposable retired pay' per existing regulations" and "pay [Wife's] share directly to [Wife]." The Personnel Center, however, rejected Wife's request for direct payment because neither the statute nor its implementing regulations allowed direct payment calculated on any basis other than the current definition of disposable retired pay, which was not net of taxes; the Personnel Center noted that applicable regulations had not permitted it to deduct taxes since 1991. Further, the parties agreed that until "the [Personnel Center's] plan administrator implements the division of [Husband's] pension," Husband was required to pay Wife a fixed "monthly sum of $2,389.93." Husband argues that this provision is intended as an alternative mechanism for payment if the Personnel Center is unable to make direct payments. But by its terms, this provision anticipates that the Personnel Center will calculate and disburse Wife's portion as the decree required. And the provision for payment by Husband in the meantime by its terms operates merely as a stop-gap mechanism, so that Wife would receive some portion of Husband's retirement pay until the Personnel Center began direct payment. *See Glenn v. Reese*, 2009 UT 80, ¶ 10, 225 P.3d 185 (explaining that when we interpret a contract, we will "consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none" (omission in original) (citation and internal quotation marks omitted)); *McNeil*, 2011 UT App 423, ¶ 17 (explaining that "[w]hen interpreting a contract we attempt to give effect to each provision, and we look for a reading that . . . avoids rendering any provision meaningless" (citations and internal quotation marks omitted)). Thus, this provision is clearly not intended as a permanent alternative to direct pay; rather, the provision for direct payment reinforces the notion that the parties intended that Wife be paid her share in accordance with the USFSPA and "existing regulations," something only possible if the division is based on the USFSPA's operative definition of "disposable retired pay."

¶38    Third, this interpretation comports with the district court's interpretation of the portions of the decree regarding the division of *Wife's* pensions, an interpretation which neither party has contested on appeal. *See G.G.A., Inc. v. Leventis*, 773 P.2d 841, 845 (Utah Ct. App. 1989) ("In interpreting a contract, we determine what the parties intended by examining the entire contract and all of its parts in relation to each other, giving an objective and reasonable construction to the contract as a whole."). Before the district court resolved the dispute over whether the division of Husband's pension should be calculated on a net basis, the court considered the parties' dispute about whether payments from Wife's retirement accounts should be calculated on a net basis. The decree provided that Wife's "monthly compensation" retirement payments from the Alaska and Utah pension systems were to be divided equally, with the "monthly compensation" defined as "gross retirement pay less authorized deductions, including amounts properly deducted for federal, state, or local taxes and disability benefits"—the same words the parties used to define Husband's disposable retired pay, the basis for dividing his military retirement payments. But regarding Wife's retirement accounts, the district court determined that "the decree of divorce [only] identified *possible* deductions . . . that may be made before division of [Wife's] retirement benefit, so long as those deductions are authorized and may otherwise be properly deducted" and that neither Alaska's nor Utah's pension systems "permit[ted] the tax deductions prior to the division of gross retirement pay." Accordingly, the court concluded that the divisible amount of Wife's Alaska and Utah pensions was the gross payment, not the net. This interpretation is entirely consistent with our own interpretation of identical language in the decree respecting division of Husband's military retirement; like the retirement plans in Alaska and Utah, deductions for taxes were "possible" but ultimately not "authorized"—and therefore not "properly deducted"—under the applicable version of the USFSPA. *See Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 28, 210

P.3d 263 ("In interpreting a contract, we look for a reading that harmonizes the provisions and avoids rendering any provision meaningless."). Moreover, the fact that the court interpreted identical language in the provisions of the decree dividing Husband's and Wife's pension benefits so differently strongly suggests that the difference in outcome regarding Husband's pension stemmed from the parties' and the court's misinterpretation of *Johnson*, not from any intent to actually divide the respective pension payments differently.

¶39    Finally, it is not insignificant that our interpretation of the parties' agreement produces a more equitable result. *See Johnson v. Johnson*, 2014 UT 21, ¶ 25, 330 P.3d 704 ("[A] former spouse is entitled to an equitable distribution of an employee spouse's retirement or pension benefits that accrue[] in whole or in part during the marriage." (second alteration in original) (citation and internal quotation marks omitted)). At oral argument, Husband conceded that he was taking the position on appeal that his own pension be divided on a net basis even though he had successfully argued below that Wife's pensions be divided on a gross basis—a result that, on its face appeared inequitable. He asserted, however, that this result was justified because it was what the parties had agreed to. But while parties in a divorce proceeding may stipulate to certain terms regarding the division of marital property, their freedom to contract is constrained by the principles of equity. *See Granger v. Granger*, 2016 UT App 117, ¶ 15 ("[I]n divorce cases, the ability of parties to contract is constrained to some extent by the equitable nature of the proceedings . . . ."). Our conclusion that the parties' agreement bound them to the specific definition of "disposable retired pay" included in the USFSPA rather than being governed by an obsolete definition allegedly articulated in *Johnson* puts Husband and Wife on an equal footing in the division of their respective retirement benefits by requiring that their respective monthly payments be divided before taxes are deducted, as both federal and state laws contemplate.

### III. Attorney Fees

¶40   Wife requests an award of the attorney fees that she has incurred to enforce the divorce decree on appeal and in the district court below. Utah Code section 30-3-3(2) provides,

> In any action to enforce an order of . . . division of property in a domestic case, the court may award costs and attorney fees upon determining that the party substantially prevailed upon the claim or defense. The court, in its discretion, may award no fees or limited fees against a party if the court finds the party is impecunious or enters in the record the reason for not awarding fees.

Utah Code Ann. § 30-3-3(2) (LexisNexis 2013). "[A]n attorney fees award granted under section 30-3-3(2) [is] within the wide discretion of the trial court . . . ." *Hall v. Hall*, 2013 UT App 280, ¶ 28, 316 P.3d 970; *Lyngle v. Lyngle*, 831 P.2d 1027, 1030 (Utah Ct. App. 1992) ("In an action to enforce the provisions of a divorce decree, an award of attorney fees is based solely upon the trial court's discretion, regardless of the financial need of the moving party."). We also note that we have previously determined that an action to have a court interpret the divorce decree, as we have done in this appeal, is properly characterized as an action to enforce the decree under section 30-3-3(2). *See Osborne v. Osborne*, 2011 UT App 150, ¶¶ 8, 10, 260 P.3d 202; *Moon v. Moon*, 1999 UT App 12, ¶¶ 18, 33, 973 P.2d 431; *Lyngle*, 831 P.2d at 1030. And "[t]he guiding factor in fee awards under subsection (2) is whether the party seeking an award of fees substantially prevailed on the claim." *Connell v. Connell*, 2010 UT App 139, ¶¶ 28–30, 32, 233 P.3d 836 (further explaining that the purpose of awarding attorney fees under section 30-3-3(2) is to "allow the moving party to collect fees unnecessarily incurred due to the other party's recalcitrance," and ordering that "[i]f the trial court in its discretion orders payment of reasonable attorney fees

pursuant to subsection (2) [on remand], its order should be supported by a finding that [the wife] substantially prevailed on the motions for which she seeks attorney fees").

¶41 "In divorce actions, we will generally award attorney fees on appeal to the prevailing party if the trial court awarded attorney fees and the receiving party prevails on the main issues on appeal." *Oliekan v. Oliekan*, 2006 UT App 405, ¶ 32, 147 P.3d 464. Here, while Wife was not the prevailing party below, she has succeeded on appeal in obtaining a reversal of the district court's order. Therefore, Wife has ultimately substantially prevailed both on appeal and in the district court. The district court on remand should evaluate Wife's "request for attorney fees upon entering judgment at the conclusion of those proceedings." *See Cantrell v. Cantrell*, 2013 UT App 296, ¶ 22 n.6, 323 P.3d 586. If the court awards attorney fees at that point, the award should also include Wife's attorney fees reasonably incurred for enforcing the decree on appeal. *See Davis v. Davis*, 2011 UT App 311, ¶ 23, 263 P.3d 520 ("Generally, when the trial court awards [or should have awarded] fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal." (alteration in original) (citation and internal quotation marks omitted)); *see also Williamson v. Williamson*, 1999 UT App 219, ¶ 14, 983 P.2d 1103 (directing the trial court that if it awards the wife attorney fees on remand, where she prevailed on appeal, it should "also . . . hear evidence regarding her reasonable attorney fees on appeal and . . . order [the husband] to pay those fees").

CONCLUSION

¶42 We conclude that the district court's order that Husband's military pension be divided on a net basis was an error where the order was based on a misinterpretation of *Johnson v. Johnson*, 2012 UT App 22, 270 P.3d 556, *aff'd in part, rev'd in part*, 2014 UT 21, 330 P.3d 704, and a misunderstanding of the requirements of

military retirement pay division under federal law. The parties themselves based the division of Husband's pay on his disposable retired pay, stipulated that the pension would be divided according to *Johnson* and the USFSPA, and did not indicate what deductions they regarded as "authorized." Thus, by stipulating that Husband's disposable retired pay was the amount to be equally divided, the parties incorporated the specialized definition of that term, including its authorized deductions, under federal law. And because the USFSPA's definition of "disposable retired pay" in effect at the time of the parties' divorce in 2013 did not authorize taxes as deductions (and had not for nearly twenty-five years), we conclude that the district court erred. Therefore, we remand for further proceedings consistent with this opinion.[7]

¶43    In addition, we direct the district court on remand to determine, under Utah Code section 30-3-3(2), whether to award Wife the attorney fees she has incurred to enforce the parties' decree. Because Wife has substantially prevailed on appeal, if the district court awards Wife attorney fees for enforcing the parties' decree below, we direct the court to also award Wife the attorney fees she incurred for enforcing the decree on appeal.

————

7. On remand, the district court should also award Wife the difference between the amount she has been paid under the stop-gap provision in the decree and the amount she should have received by direct payment from the Personnel Center from the time the Personnel Center approved her first payment request.