2019 UT App 25

## THE UTAH COURT OF APPEALS

HOLLY REBECCA ROSSER,
Appellee,
*v.*
RONALD LEE ROSSER,
Appellant.

Amended Opinion[1]
No. 20170736-CA
Filed February 14, 2019

Sixth District Court, Panguitch Department
The Honorable Paul D. Lyman
No. 154600013

Steven W. Beckstrom, Attorney for Appellant

Stephen D. Spencer, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and DIANA HAGEN concurred.

HARRIS, Judge:

¶1     Ronald Lee Rosser and Holly Rebecca Rosser divorced in 2016 pursuant to a stipulated decree of divorce that was the result of mediation. One of the points of contention in their divorce case was how the parties would divide their 2015 tax obligations. At the conclusion of the mediation, the parties apparently agreed to split the 2015 tax liability equally. A few

---

1. This Amended Opinion replaces the Opinion in Case No. 20170736-CA that was issued on January 10, 2019. After our original opinion issued, Ronald filed a petition for rehearing, and we called for a response. We grant the petition for the limited purpose of clarifying Ronald's entitlement to an award of attorney fees, as reflected in footnote 9 herein.

weeks later, however, both parties executed a stipulated decree of divorce that obligated Holly[2] to "pay any tax liabilities . . . for the year 2015." Later, after Ronald refused to pay any of the outstanding 2015 tax obligation, Holly obtained an order to show cause and asked the district court to hold Ronald in contempt of court for refusing to pay his share of the 2015 taxes. The court granted Holly's request and found Ronald in contempt. Ronald now appeals, and we agree with Ronald that the actions he was found to have taken do not constitute statutory contempt of court. Accordingly, we vacate nearly the entirety of the district court's contempt order, and remand this case for further proceedings.

BACKGROUND

¶2    After twenty-five years of marriage, Holly and Ronald separated in 2014, and Holly later petitioned for divorce. Over the course of their marriage, the parties acquired various assets, including several vehicles, a residence in Panguitch, Utah, two other parcels of real property, and a number of franchise restaurants that were owned by a company in which Holly and Ronald each held a 50% stake. In addition to these assets, the parties also had certain debts, including a $29,902.71 tax obligation owed to the IRS for the 2015 tax year. The parties took opposing positions regarding the division of some of these assets and liabilities.

¶3    In an attempt to resolve their differences prior to trial, the parties agreed to participate in mediation on June 16, 2016. During that mediation session, the parties were able to come to an agreement regarding all of their issues, including the 2015 tax

---

2. Because both parties share the same surname, we identify the parties by their first names throughout this opinion. We intend no disrespect by the apparent informality.

obligation. This consensus was memorialized in a three-page written agreement (the Mediation Agreement) that was signed by all parties immediately upon completion of the mediation. With regard to the tax obligation, the Mediation Agreement states as follows: "IRS debt from 2015, 50% Ron and 50% Holly." The parties also agreed that Ronald would be entitled to certain "rebates" that the couple's business received.

¶4 In the weeks following the mediation, Holly paid her half of the 2015 tax obligation. For reasons unclear from the record, Ronald did not. However, Ronald did contact the parties' accountant and identify several additional tax deductions that he thought could potentially reduce the parties' 2015 tax liability. Acting on Ronald's instructions, in July 2016 the accountant prepared an amended 2015 tax return for Ronald and Holly. In preparing that return, however, the accountant mistakenly assumed that the entire previous 2015 tax obligation of $29,902.71 had already been paid, when in reality only half of it (Holly's half) had actually been paid. As a result, the amended tax return indicated that not only did Ronald and Holly not owe any taxes for 2015, they were actually due a tax refund of approximately $7,900. Holly would later testify that, operating on the assumption that Ronald had paid his half of the pre-existing 2015 tax obligation as she had done, she believed that the amended returns were accurate and that the parties were in fact owed a refund. For his part, Ronald would later testify that he also believed the amended tax returns were accurate, but premised this belief on a different assumption: that Holly had paid the entirety of the 2015 tax obligation in consideration for other income she had negotiated from him. Apparently both under the belief that the amended returns were accurate, the parties signed those returns on or about August 22, 2016.

¶5 On or about August 4, 2016—after the amended tax returns had been prepared and reviewed, but before either party actually signed them—the parties and their attorneys all signed a Stipulated Motion for Entry of Findings of Fact and

Conclusions of Law and Final Decree of Divorce. With respect to the 2015 tax obligation, that stipulation stated—in contrast to the Mediation Agreement—that Holly "shall be solely entitled to receive any refund resulting from the amended returns, and shall also be responsible to pay any tax liabilities resulting to any of the Parties for the year 2015." A few days later, on August 8, 2016, the district court signed a Final Decree of Divorce (the Decree) in accordance with the parties' stipulated motion. Under the terms of the Decree, Holly "shall be solely entitled to receive any refund resulting from the amended [2015 tax] returns, and shall also be responsible to pay any tax liabilities resulting to any of the Parties for the year 2015." The Decree also states that Ronald is entitled to the rebates as agreed upon at the mediation.

¶6    Holly later discovered that the amended tax returns were inaccurate, and that instead of being entitled to a $7,900 refund for tax year 2015, the parties still owed $7,174.98. Under the terms of the recently-entered Decree, Holly was obligated to make this payment, but she considered that result unfair since she had already paid her half of the 2015 tax obligation, as the parties had agreed at mediation, and Ronald had not. In part because she felt as though Ronald owed her money related to the 2015 tax obligation, she declined to pass along to Ronald certain rebate checks she received to which Ronald was entitled under the terms of the Decree.

¶7    On November 21, 2016, Holly filed a Motion for Order to Show Cause, alleging that Ronald had defrauded her and asking the court to order Ronald to pay his share of the parties' 2015 tax obligations as well as her attorney fees in bringing the motion. A few weeks later, Ron filed his own Motion for Order to Show Cause, alleging that Holly had willfully failed to comply with the provision of the Decree that concerned the rebates. Eventually, the district court scheduled both motions for an evidentiary hearing. During that hearing, Holly testified that Ronald had misled her into believing that he had paid his share of the parties' 2015 tax obligation assigned to him pursuant to

the Mediation Agreement. Ronald, by contrast, testified that Holly was not only aware that he had not done so, but that after mediation she had agreed to pay the entirety of the tax obligation. With regard to the rebates, Holly acknowledged that she had received rebate checks to which Ronald was entitled under the Decree, but stated that she had not passed those along to Ronald because she felt that he owed her money related to the 2015 tax obligations.

¶8 At the conclusion of the hearing, the court found that Ronald deceived Holly by allowing her to believe that he had paid his share of the tax obligation, and that Holly had not in fact agreed to pay it herself. The court then found Ronald in contempt of court for "his deliberate deceit and failure to act as agreed between the parties on June 16, 2016," and ordered Ronald to pay Holly approximately $15,000 plus reasonable attorney fees, which were later determined to be $4,000. The court also found that Holly had "failed to make" the rebate payments to Ronald as required by the Decree, but that Holly's conduct "did not intentionally violate the Decree" because Holly was "merely reacting to [Ronald's] deceit." Accordingly, the court allowed Holly to "offset" the rebate amounts she owed Ronald against the amount it determined Ronald owed her on the tax issue. After quantifying the amount of attorney fees to which it believed Holly was entitled, the court eventually entered judgment against Ronald in the amount of $18,951.11, but stated, in the judgment, that Holly "may apply" the "rebates toward the judgment and thus give [Ronald] credit" for them.

ISSUE AND STANDARD OF REVIEW

¶9 Ronald appeals from that judgment, and asks us to consider whether the district court erred in holding him in contempt. When reviewing a district court's decision to find a party in contempt, "we review the district court's findings of fact

for clear error and its legal determinations for correctness." *LD III LLC v. Davis*, 2016 UT App 206, ¶ 12, 385 P.3d 689 (quotation simplified). Ronald's chief complaint with the district court's contempt determination is a legal one: Ronald contends that the facts alleged by Holly, even if true, cannot constitute statutory contempt of court as a matter of law.[3] This is a legal question that we review for correctness. *Id.*

ANALYSIS

¶10 Under Utah statutory law, a court has authority to hold a person in contempt of court for any one of twelve enumerated reasons. *See* Utah Code Ann. § 78B-6-301 (LexisNexis 2012).[4]

---

3. Among other additional arguments, Ronald also takes issue with certain of the district court's factual findings supporting its contempt determination, but because we determine that the facts as set forth by Holly cannot constitute statutory contempt as a legal matter, we need not consider any of Ronald's other arguments, including whether the district court clearly erred in any of its factual determinations.

4. Under Utah law, courts also have inherent (non-statutory) contempt powers. *See Chen v. Stewart*, 2005 UT 68, ¶ 36, 123 P.3d 416 ("A court's authority to sanction contemptuous conduct is both statutory and inherent."). In this case, however, Holly did not ask the district court to invoke its inherent powers and, in its order, the district court did not expressly invoke any such powers. On appeal, Holly defends the district court's order by asserting that the court had the statutory power to issue its contempt order. Because the district court does not appear to have invoked its inherent power, and because Holly does not argue that it did, we do not address whether the district court would have had the power to hold Ronald in contempt of court pursuant to its inherent (as opposed to its statutory) authority.

Ronald contends that none of the twelve grounds apply here, and that therefore the district court was without statutory authority to hold him in contempt. We agree with Ronald.

¶11   In this case, while it is clear that the district court found that Ronald was in contempt of court, it is unclear which of the twelve statutory grounds the court relied upon. In its order, the court stated that Ronald was "in contempt, due to his deliberate deceit and failure to act as agreed between the parties on June 16, 2016." The court gave no other indication of the legal (as opposed to the factual) grounds for its determination that Ronald was in contempt of court.

¶12   Holly asserts that the district court implicitly relied upon two of the twelve statutory grounds for contempt: (a) the fourth one, which allows a court to find a "party to an action" in contempt for "deceit, or abuse of the process or proceedings of the court"; and (b) the fifth one, which allows a court to find a person in contempt for "disobedience of any lawful judgment, order or process of the court." *Id.* § 78B-6-301(4), (5). We are not convinced that either of these grounds was appropriately invoked in this case.

¶13   The court did mention Ronald's "deliberate deceit" as part of its reason for holding Ronald in contempt of court. But the deceit the court described in its findings was not deceit Ronald committed upon the court; rather, it was deceit Ronald apparently committed upon Holly by not telling her that he had failed to pay his share of the parties' 2015 tax obligation. In this case, there is no allegation, let alone a finding, that Ronald committed deceit or fraud *on the court*, and in our view subsection (4) of the contempt statute must be interpreted to include only deceit committed on the court.

¶14   We reach that conclusion after reviewing the provision in context. First, subsection (4)—unlike other subsections—is by its

own terms limited to the actions of "part[ies] to the action or special proceeding." *See id.* § 78B-6-301(4). Second, "deceit" is part of a short list of things that might be found contemptuous under that subsection, and the other thing listed is "abuse of the process or proceedings of the court." *Id.* Our supreme court requires a "commonsense approach" to statutory interpretation in which "a word is given more precise content by the neighboring words with which it is associated." *See Thayer v. Washington County School Dist.*, 2012 UT 31, ¶ 15, 285 P.3d 1142 (quotation simplified). Here, the entire thrust of the subsection is aimed at allowing a court to penalize deceitful misuse of judicial proceedings by parties to those proceedings. Ronald's actions were all undertaken toward Holly, and not toward the court, and thus cannot fall within the ambit of subsection (4).

¶15    It is contemptible deceit, for example, to lie to a court under oath.[5] *See Bhongir v. Mantha*, 2016 UT App 99, ¶ 16, 374 P.3d 33. It is also contemptible deceit to file false documents, *see, e.g. PacifiCorp v. Cardon*, 2016 UT App 20, ¶ 3, 366 P.3d 1226,

---

5. During the course of the hearing on Holly's order to show cause, Ronald testified that he had a meeting with Holly in July 2016 where she agreed to pay all of the 2015 taxes. Holly denied that any such meeting ever occurred, and denied ever agreeing to pay the entirety of the 2015 tax obligation. The district court credited Holly's version of those events, and made a finding that Ronald was "not telling the truth" in setting forth his version. However, there is no indication in the remainder of the court's contempt order that it intended to hold Ronald in contempt for the particular statement that it found was not true. The court's specific contempt finding lists only "deceit" in "fail[ing] to act as agreed between the parties on June 16, 2016," and makes no attempt to ground a contempt finding on any "deceit" associated with Ronald's testimony about the July 2016 meeting.

or to falsely testify during a divorce proceeding that one has very little money and then skip town with money which one has previously deposited under an assumed name, *see Smith v. Smith*, 218 P.2d 270, 271–72 (Utah 1950). But these are all actions taken toward the court, and we are aware of no case—and Holly provides us with none—in which a court held a person in contempt for deceit that occurred outside of the presence of the court, was directed towards another party, and did not involve false sworn testimony or the filing of a falsified document.

¶16 We share Ronald's concern that, were Holly's position governing law, there would be little to prevent any untruthful statement made by any party to anyone while litigation is pending from being punishable by contempt of court. Indeed, Holly's contentions in this case are, in essence, that Ronald breached the Mediation Agreement and in the course of doing so made fraudulent statements—or at least committed fraudulent nondisclosure—toward Holly. In our view, it would stretch the meaning of subsection (4) of the contempt statute well beyond its intended meaning if facts like these, even if true, were determined to fall within its ambit.

¶17 Holly next contends that the district court could also have been relying on subsection (5), which allows a court to punish "disobedience of any lawful judgment, order or process of the court." Utah Code Ann. § 78B-6-301(5) (2012). But the district court did not reference any judgment or order that it believed Ronald disobeyed. Instead, the only document the court mentioned was the Mediation Agreement; the court faulted Ronald for failing "to act as agreed between the parties on June 16, 2016." It is undisputed that, as part of the Mediation Agreement, Ronald agreed to pay half of the parties' 2015 tax obligation, and that he did not ever actually do so. But the Mediation Agreement was not an order of the court; it was just a private agreement between two parties. Breach of a private

agreement that has not yet been made an order of the court cannot be a violation of subsection (5) of the contempt statute.[6]

¶18 Holly attempts to defend the court's contempt order by asserting that Ronald was not only in violation of the parties' private Mediation Agreement, but that he was also in violation of the Decree, and that—even though the district court made no mention of it—the district court intended to hold Ronald in contempt for failure to comply with the terms of the Decree. For support, Holly directs our attention to paragraph 9(r) of the Decree, which is the paragraph setting forth the parties' rights and obligations regarding the 2015 tax obligation. As noted above, that paragraph states that Holly is to receive any 2015 tax refund to which the parties may be entitled, but that Holly "shall also be responsible to pay any tax liabilities resulting to any of the Parties for the year 2015." The plain terms of the Decree (as opposed to the Mediation Agreement) obligate Holly to pay the entirety of the parties' 2015 tax obligation, whatever that obligation might be. While Ronald's failure to pay half of that obligation may well violate the terms of the Mediation Agreement, such failure clearly does not violate the terms of the Decree, because the Decree imposed upon Ronald no obligation to pay any of the parties' 2015 tax obligation.

---

6. The district court ordered the parties to participate in mediation. However, Holly makes no claim that Ronald failed to participate in mediation, or that the district court intended to hold Ronald in contempt for violating its order that the parties participate in mediation. *See, e.g.*, *Rawlings v. Rawlings*, 2008 UT App 478 ¶¶ 24-28, 200 P.3d 662 (holding that while complete failure to participate in court-ordered mediation may constitute a violation of a court order to participate in mediation in good faith, participating with no intention of making or considering any settlement offers does not), *reversed on other grounds by Rawlings v. Rawlings*, 2010 UT 50, 240 P.3d 754.

¶19    Holly argues, however, that paragraph 9(r) of the Decree is at least ambiguous, and asks us to consider parol evidence, most notably the Mediation Agreement, in construing its terms. Holly maintains that the "ambiguity" contained in paragraph 9(r) was "the presence or absence of a tax refund," and asserts that she only agreed to the terms of the Decree because she believed that she would receive a tax refund. Holly's argument fails, however, because the plain language of the Decree is not itself ambiguous, and clearly obligates her—and not Ronald—to pay any outstanding tax liability. A provision is ambiguous only if "its terms are capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial ambiguities." *See Mind & Motion Utah Investments, LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 24, 367 P.3d 994 (quotation simplified). If the language is not ambiguous, "the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Id.* (quotation simplified). "Terms are not ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests." *Id.* (quotation simplified). Instead, "the proffered alternative interpretations must be plausible and reasonable in light of the language used." *Id.* (quotation simplified).

¶20    Holly's interpretation of the language contained in paragraph 9(r) is simply not "plausible and reasonable in light of the language used." *Id.* Where the language clearly imposes upon Holly the obligation to pay whatever tax obligation the parties owed for the 2015 tax year, any interpretation that imposes that obligation, even in part, upon Ronald is simply not consonant with the plain meaning of the language used. Accordingly, Ronald's failure to pay any portion of the parties' 2015 tax obligation is not a violation of the plain terms of the Decree, and therefore the district court could not have properly held Ronald in contempt of court on that basis.

CONCLUSION

¶21 A statutory contempt remedy simply does not fit the facts of this case, even if we assume that Holly's version of the facts is correct. Ronald did not commit deceit on the court, nor did he violate an order or judgment of the court. He appears to have violated the terms of the Mediation Agreement, and—although we express no opinion on the matter—he may have committed fraud or fraudulent nondisclosure upon Holly in the time period between the mediation and the entry of the Decree. But Holly's remedy, if any, for Ronald's actions must be found somewhere other than the contempt statute.[7] We vacate nearly the entirety[8]

---

7. For instance, a party in Holly's situation could, among other options, (a) elect to file a petition to modify the Decree, asserting a substantial and material change in circumstances; (b) file a motion, pursuant to rule 60(b)(3) of the Utah Rules of Civil Procedure, seeking relief from the terms of the Decree on the basis of fraud; or (c) file a separate lawsuit alleging fraud, fraudulent nondisclosure, or some other appropriate cause of action, and seeking damages. We express no opinion about whether, on the facts presented here, Holly would be entitled to relief under any of these options.

8. We do not vacate Paragraphs 20–22 of the district court's contempt order. In those paragraphs, the district court determined that Holly had failed to comply with the provision of the Decree that required her to pass along to Ronald certain rebate checks that she might receive. Holly has not appealed those findings, and takes no issue with them in the context of Ronald's appeal. On remand, the district court may revisit the question of whether Holly is entitled to offset her obligation to Ronald regarding the rebate checks against any other obligation Ronald may owe her, or whether a judgment in Ronald's favor regarding the rebate checks is appropriate.

of the district court's contempt order, including its order that Ronald pay attorney fees,[9] and remand this case for further proceedings consistent with this opinion.

————————

9. Ronald not only asks that we vacate the attorney fees award entered against him, which we hereby do, but he also asks that we also (a) order Holly to reimburse him for the attorney fees he incurred on appeal and (b) direct the district court to award him his fees he incurred during the contempt proceedings before the district court. Ron's request for an affirmative award of attorney fees is premature. As we have previously stated, in situations like this it will be up to the district court, on remand, to determine whether Ron should be awarded his attorney fees incurred during the contempt proceedings before the district court. *See Thayer v. Thayer*, 2016 UT App 146, ¶ 41, 378 P.3d 1232 (reversing a district court decision in favor of Husband and noting that therefore "Wife has ultimately substantially prevailed both on appeal and in the district court," but declining to direct the district court to award Wife the fees she incurred before the district court, stating that "[t]he district court on remand should evaluate Wife's request for attorney fees . . ."). Ron has certainly prevailed on appeal, but he will only be entitled to reimbursement of the attorney fees he incurred on appeal if the district court, on remand, decides to award Ron the attorney fees he incurred before the district court. *Id.* (stating that "[i]f the court awards attorney fees [on remand], the award should also include Wife's attorney fees reasonably incurred for enforcing the decree on appeal").