2012 UT 44

Stephen G. MAXFIELD, Petitioner
and Appellant,

v.

GARY HERBERT and Peter Corroon,
Respondent and Appellee.

No. 20110425.

Supreme Court of Utah.

July 20, 2012.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Steven G. Maxfield, pro se.

David J. Jordan, Timothy K. Conde, Salt Lake City, for appellee.

Justice LEE, opinion of the Court:

¶ 1 Stephen Maxfield challenged the results of the 2010 gubernatorial election under Utah's election-contest statute, UTAH CODE § 20A–4–402, asking the district court to declare him and his running mate the lieutenant governor and governor of Utah, respectively. The court dismissed the petition, concluding that the statutory grounds for an election contest did not encompass Maxfield's claims. We affirm.

## I

¶ 2 Stephen Maxfield ran for lieutenant governor in Utah's November 2010 gubernatorial election. Maxfield and his running mate, Farley Anderson, finished third. Two months prior to the election, Maxfield filed a petition with the lieutenant governor under Utah Code section 20A–1–703.[1] Maxfield complained that incumbent gubernatorial candidate Gary Herbert and his challenger Peter Corroon had violated the election code's financial reporting requirements. Frustrated that the lieutenant governor did not immediately appoint special counsel as authorized by statute,[2] Maxfield sought extraordinary relief from this court less than a month after he filed his petition with the lieutenant governor. He asked this court for a declaratory order clarifying various statutory provisions, an order directing the lieutenant governor to forward the petition to the attorney general, and an order directing the attorney general to appoint outside counsel to investigate the alleged misdeeds. In support of this petition, Maxfield alleged a conflict inherent in the lieutenant governor's statutory duty to investigate allegations against his running mate, particularly in light of the lieutenant governor's role as primary officer of Herbert's political action committee and personal campaign committee. We denied the petition, explaining that the appropriate relief was a declaratory judgment from a district court rather than a declaratory order from this one.

¶ 3 One month before the election, Maxfield filed an "election controversy" petition in district court under Utah Code section 20A–1–404.[3] In that petition, Maxfield asked the court to disqualify Herbert and Corroon, remove their names from the ballot, and to inform voters that votes cast for them would not be counted.[4] Soon after filing the petition, Maxfield sought emergency relief, asking us to order the district court to expedite the petition and to prevent the lieutenant governor from certifying the election results until the petition was resolved. We denied this relief. Six months later, in 2011, the district court dismissed the petition, concluding that Utah Code section 20A–1–404 "does not create a cause of action against other candidates or allow them to be named as a defendant." Maxfield did not appeal that decision.

¶ 4 After the election, on December 23, 2010, Maxfield filed this action—styled as an election contest under Utah Code section 20A–4–402. The allegations in this suit were the same campaign finance allegations set forth in Maxfield's petition to the lieutenant governor under section 20A–1–703 and in his election controversy filed under section 20A–1–404. Seeking to fit these same allegations within the permissible grounds for an election contest, Maxfield invoked section 20A–4–402(1)(b), under which "[t]he election ... of any person to any public office ... may be contested ... when the person declared elected was not eligible for the office at the time of the election." Specifically, Maxfield alleged that the first- and second-place gubernatorial candidates—Gary Herbert and Peter Corroon, respectively—were "not eligible for the office" of governor at the time of

---

1. Section 20A–1–703(1) provides: "Any registered voter who has information that any provisions of this title have been violated by any candidate for whom the registered voter had the right to vote, by any personal campaign committee of that candidate, by any member of that committee, or by any election official, may file a verified petition with the lieutenant governor."

2. *See* UTAH CODE § 20A–1–703(2)(b) ("If the lieutenant governor determines that a special investigation is necessary, the lieutenant governor shall refer the information to the attorney general, who shall: (i) bring a special proceeding to investigate and determine whether or not there has been a violation; and (ii) appoint special counsel to conduct that proceeding on behalf of the state.").

3. *See id.* § 20A–1–404(1)(a)(i) ("Whenever any controversy occurs between any election officer or other person or entity charged with any duty or function under this title and any candidate, or the officers or representatives of any political party, or persons who have made nominations, either party to the controversy may file a verified petition with the district court.").

4. *See id.* § 20A–11–206(1) (disqualifying state office candidates who fail to file required financial reports, and instructing the lieutenant governor "to remove the name of the candidate from the ballots" or "inform the voters ... that the candidate has been disqualified and that votes cast for the candidate will not be counted").

the election because they had violated Utah's campaign finance statutes.

¶ 5 The election-contest statute requires the district court to schedule an evidentiary hearing to determine the contest within thirty days after a petition is filed. *See* UTAH CODE § 20A–4–404(1)(b)(ii). The statute further directs the court to "issue a subpoena for the person whose right to the office is contested to appear" at the hearing, *id.* § 20A–4–404(1)(c)(i), and mandates that the "respondent shall answer the petition within five days after the service," *id.* § 20A–4–403(5)(c), and that the "court shall meet at the time and place designated to determine the contest," *id.* § 20A–4–404(2).

¶ 6 As required by statute, the court set a hearing for January 19, 2011, and issued subpoenas for Herbert and Corroon to appear. In lieu of filing an "answer" under rule 8 of the Utah Rules of Civil Procedure, however, Herbert and Corroon filed motions to dismiss under rule 12(b)(6). Herbert argued that any alleged campaign finance violations would not render him "ineligible" for office because "eligible" as used in Utah Code section 20A–4–402(1)(b) refers solely to eligibility requirements specified in the Utah Constitution. Corroon, for his part, asserted that the statute is implicated only "when the person *declared elected* was not eligible for office at the time of the election," *id.* § 20A–4–402(1)(b) (emphasis added), and that he was never "declared elected" as he was the second-place finisher in the election.

¶ 7 Maxfield responded with a submission styled as a "motion to quash," arguing that the statutory election-contest procedures "supersede the standard rules of civil procedure for service, time of response, scheduling of hearing and disposal of the matter." He insisted that the only responsive pleading permitted in an election contest is the "answer" specified in Utah Code section 20A–4–403(5)(c) and that a 12(b)(6) motion is not such an answer. He also pointed to the statutory requirement that the court hold an evidentiary hearing within thirty days, and asserted that he had insufficient time to re-

spond to the 12(b)(6) motions prior to the January 19 hearing.

¶ 8 Rather than summarily reject the 12(b)(6) motions as Maxfield had requested, the court canceled the January 19 evidentiary hearing and scheduled a new hearing for January 25. The court also informed the parties that the January 25 hearing would be merely a motion hearing, "not an evidentiary hearing" requiring Herbert's appearance.

¶ 9 At that hearing, the district court granted the motions to dismiss. In its memorandum decision, the court opined that the rules of civil procedure apply "except where specifically modified by statute," and that the respondents' 12(b)(6) motions were thus properly filed, considered, and granted. The court further concluded that Maxfield could not challenge Corroon's eligibility for office because Corroon was not "the person declared elected." *See id.* § 20A–4–402(1)(b). As to Herbert, the court concluded that "eligibility" as used in the statute "is determined by the state's constitution" and that violation of campaign finance statutes would not render a candidate "ineligible for the office at the time of the election."

¶ 10 Challenging this ruling, Maxfield filed a motion for a new hearing. There he raised two additional grounds for his election contest: (1) "when the person declared elected has ... committed any other offense against the elective franchise," *id.* § 20A–4–402(1)(c)(ii), and (2) "for any other cause that shows that another person was legally elected," *id.* § 20A–4–402(1)(i).[5] The court rejected these arguments, explaining that Maxfield's newly asserted grounds did not authorize the court "to conduct an inquiry into the alleged violations of the election laws."

▆ ¶ 11 Maxfield appealed the district court's decision concerning Herbert. *See id.* § 20A–4–406(1)(a) ("Either party may appeal the district court's judgment to the Supreme Court...."). We review the district court's decision to grant Herbert's 12(b)(6) motion for correctness. *Archuleta v. St. Mark's*

---

5. Maxfield initially raised Utah Code section 20A–4–402(1)(i) during the hearing on Herbert's motion to dismiss. But the district court made

no mention of this in its decision granting Herbert's motion.

*Hosp.*, 2009 UT 36, ¶ 5, 238 P.3d 1044. Within the bounds set by rule and statute, however, we note that a district court's "management of its docket and trial schedule is reviewed for an abuse of discretion." *Clayton v. Ford Motor Co.*, 2009 UT App 154, ¶ 12, 214 P.3d 865.

## II

¶ 12 Maxfield raises two essential issues on appeal, one procedural and one substantive. He first contends that the district court erred in failing to follow the procedures mandated by the election-contest statute. Second, he challenges the district court's refusal to allow him to bring an election contest based on allegations of campaign finance violations. We reject both arguments and affirm.

## A

¶ 13 Maxfield's procedural arguments focus our attention on the interplay between special statutory proceedings and the Utah Rules of Civil Procedure. Specifically, Maxfield identifies purported conflicts between the rules and the election code regarding procedures for pleading, calendaring, and disposition of an election contest. And resting on the axiom that statutes generally trump rules, Maxfield contends that the district court should have adhered to the statute rather than the rules.

¶ 14 First, Maxfield insists that the district court should not have allowed Herbert to file a 12(b)(6) motion because the statute mandates that the "respondent shall *answer* the petition within five days after the service." UTAH CODE § 20A-4-403(5)(c) (emphasis added). Second, Maxfield asserts that the court should not have canceled the originally scheduled January 19 hearing because the statute requires a hearing within "30 days from the date the petition was filed" and provides that the court "shall meet at the time and place designated to determine the contest." *Id.* §§ 20A-4-404(1)(b)(ii), -404(2). In Maxfield's view, this means that the court should have held a full evidentiary hearing on January 19 to rule on Maxfield's campaign finance allegations rather than delaying the hearing until January 25 and considering only the 12(b)(6) motions. We disagree.

¶ 15 Preliminarily, we note that our rules of procedure are not necessarily subordinate to the provisions of state statutes. It is this court's constitutional prerogative to "adopt rules of procedure and evidence to be used in the courts of the state," subject to the legislature's power to "amend" our rules "upon a vote of two-thirds of all members of both houses." UTAH CONST. art. VIII, § 4. We need not reach the question of the viability of the procedural provisions of the election code, however, given that the constitutional question has not been briefed and our statutes are entitled to a "strong presumption" of constitutionality. *Peterson v. Coca–Cola USA*, 2002 UT 42, ¶ 23, 48 P.3d 941 (internal quotation marks omitted).

¶ 16 Our rules themselves, moreover, expressly carve out a place for special statutory procedures. Specifically, rule 81 clarifies that our rules "apply to all special statutory proceedings, except insofar as such rules are by their nature clearly inapplicable." UTAH R. CIV. P. 81(a). Maxfield's arguments fail under this provision because there is no genuine conflict between our rules and the election code's procedures on the matters he raises. And absent such conflict, we uphold the applicability of the rules of procedure challenged by Maxfield and applied by the district court.

¶ 17 When the legislature regulates special statutory proceedings, it acts against a presumption that our rules of procedure operate as a general backdrop for judicial proceedings, occupying any gaps in special procedures prescribed by statute. If the legislature seeks to supersede the rules of civil procedure for special statutory proceedings, then, it must adopt provisions that clearly counter and thus override our generally applicable rules. The election code does not do so on the points raised by Maxfield, leaving our rules of procedure to fill in the gaps.

¶ 18 As for the statutory requirement that the "respondent shall answer the petition within five days after the service," UTAH CODE § 20A-4-403(5)(c), we read this provision to supersede only the usual twenty-day

period for filing an answer. *See* UTAH R. CIV. P. 12(a) ("[A] defendant shall serve an answer within twenty days after the service of the summons and complaint...."). The obvious function of the statute is to speed up the litigation process and ensure prompt resolution of time-sensitive election disputes. But the statute says nothing about whether any defenses may be raised by motion. So long as those defenses are raised within the time allowed for filing an answer, the statute nowhere precludes their being raised.

¶ 19 Rule 12(b) fills the void in the statute on this question, providing that certain defenses "may at the option of the pleader be made by motion." UTAH R. CIV. P. 12(b). Under rule 12(b), any party obligated to respond to an initial pleading has the option of presenting all defenses in an answer or of raising 12(b) defenses by motion. A respondent in an election contest—like any other party obligated to file an answer—has the option to assert certain defenses by motion. The statute nowhere omits that option; it merely requires that any such motion be filed within the shortened five-day response time.

¶ 20 Nothing in the election code forecloses the viability of the mechanism of a 12(b) motion. The defenses identified in the rule are no less applicable in election contests than in other judicial proceedings: Jurisdiction, venue, and failure to state a claim, for example, could certainly be viable issues in an election contest. And where those defenses are implicated, they raise threshold questions that ought to be evaluated at the outset before considering the evidence relevant to the merits of the parties' positions. It would be a waste of time to require the parties to proceed to the merits when a ruling on a 12(b) motion could properly dispose of the case. Rule 12(b), then, is not clearly inapplicable to election contests, and the district court did not err in disposing of

the case by deciding Herbert's 12(b)(6) motion, which was filed within the five days allowed by statute.

¶ 21 We likewise reject Maxfield's challenge to the nature and timing of the hearing held in the district court. The election code certainly does require a hearing "30 days from the date the petition was filed." UTAH CODE § 20A–4–404(1)(b)(ii). But we do not construe this provision as Maxfield does—to always and necessarily require the court to take evidence at such hearing on the merits of the stated grounds for the election contest. The statute simply requires a timely hearing "to determine the contest." *See id.* § 20A–4–404(2). Once 12(b) defenses are deemed in play, the "contest" necessarily implicates those defenses and not just the merits of the purported grounds for contesting the election. And the district court has discretion to decide how to order and structure a hearing on that contest.[6] Nothing in the election code interferes with that discretion. Surely the district court is not required to accept and consider evidence of the merits of a ground for an election contest that is irrelevant to the disposition of the case.[7] Thus, a threshold consideration of 12(b) defenses seems entirely appropriate, and certainly within the discretion left for the district court under the rules of procedure as informed by the election code.

¶ 22 The timing of the district court's hearing is another matter. The statute requires a hearing within "30 days from the date the petition was filed." *id.* § 20A–4–404(1)(b)(ii). That leaves little room to challenge Maxfield's position that the hearing should have been held by January 19, when the thirty-day period expired. But although Maxfield had a right to a hearing by January 19, that right was likewise subject to waiver. And when the hearing was rescheduled to

---

**6.** *See Clayton v. Ford Motor Co.,* 2009 UT App 154, ¶ 12, 214 P.3d 865 ("A trial courts management of its docket and trial schedule is reviewed for an abuse of discretion."); *Berrett v. Denver & Rio Grande W. R.R. Co.,* 830 P.2d 291, 293 (Utah Ct.App.1992) ("Trial courts have broad discretion in managing the cases assigned to their courts.").

**7.** *See Slisze v. Stanley–Bostitch,* 1999 UT 20, ¶ 17, 979 P.2d 317 ("The trial court is granted broad discretion in determining the relevance of proffered evidence ...." (internal quotation marks omitted).

January 25, it appears to have been at Maxfield's behest. Maxfield insisted that he needed a full day for the hearing if the court was going to consider the 12(b) motions, and the court offered January 25 as the next date when a full-day hearing could be convened. Upon acquiescing in that date, Maxfield at least arguably waived his right to a hearing by January 19.

¶ 23 Even if the right to a timely hearing was not waived, the timing defect would not be reversible error. Maxfield has identified no harm that could be remedied by a remand. The thirty-day time limit is long since passed, and unfortunately our judicial power does not encompass the capacity to turn back the clock to provide a time-compliant hearing. The only remedy available to us now is to remand for a new hearing, and such a hearing would in no way cure any amorphous harm flowing from the six-day delay in the proceedings below. We accordingly affirm, while acknowledging Maxfield's right to a timely hearing.

## B

¶ 24 As to the substance of the case, Maxfield challenges the district court's rejection of his assertion that Herbert's alleged campaign finance violations rendered him "not eligible for the office" within the meaning of Utah Code section 20A–4–402(1)(b). Maxfield's claim is premised on Utah Code section 20A–11–206(1)(b), which provides that "[a]ny state office candidate who fails to file timely a financial statement required by [applicable provisions of chapter 11] is disqualified and the vacancy on the ballot may be filled." Maxfield equates "not eligible" in the election-contest provisions with "disqualified" in the campaign finance provisions. Because Herbert allegedly committed disqualifying campaign finance violations, Maxfield insists that Herbert was ineligible for purposes of the election-contest provisions.

¶ 25 Maxfield's position hinges on the notion that constitutional eligibility is a necessary, but not sufficient, condition for placement on the ballot in any given election. As Maxfield notes, candidates for public office must also comply with statutory campaign finance disclosure requirements or risk "disqualifi[cation]" and removal from "the ballot" under Utah Code section 20A–11–206(1)(b). Thus, in Maxfield's view, a candidate cannot be "disqualified" from the ballot yet remain "eligible" for office.

¶ 26 The district court disagreed, concluding that "eligible for the office" in Utah Code section 20A–4–402(1)(b) refers only to constitutional eligibility requirements. In the district court's view, allegations that a candidate has violated campaign finance laws are not viable grounds for an election contest under Utah Code section 20A–4–402(1)(b), but must instead be pursued through a petition to the lieutenant governor under section 20A–1–703.

¶ 27 We adopt the district court's view and reject Maxfield's contentions. "[E]ligible for the office" under section 20A–4–402(1)(b) is best interpreted as referring only to constitutional eligibility, and an election contest is not the proper forum for a voter to raise allegations of campaign finance disclosure violations.

¶ 28 The terminology of *eligibility* for office is used extensively in state constitutions.[8]

8. *See,* ARIZ. CONST. art. V, § 2 ("No person shall be eligible to any of the offices mentioned in section 1 of this article except a person of the age of not less than twenty-five years, who shall have been for ten years next preceding his election a citizen of the United States, and for five years next preceding his election a citizen of Arizona."); HAW. CONST. art. V, § 1 ("No person shall be eligible for the office of governor unless the person shall be a qualified voter, have attained the age of thirty years and have been a resident of this State for five years immediately preceding the person's election."); IDAHO CONST. art. IV, § 3 ("No person shall be eligible to the office of governor or lieutenant governor unless he shall have attained the age of thirty years at the time of his election...."); ILL. CONST. art. V, § 3 ("To be eligible to hold the office of Governor, Lieutenant Governor, Attorney General, Secretary of State, Comptroller or Treasurer, a person must be a United States citizen, at least 25 years old, and a resident of this State for the three years preceding his election."); MD. CONST. art. II, § 5 ("A person to be eligible for the office of Governor or Lieutenant Governor must have attained the age of thirty years, and must have been a resident and registered voter of the State for five years next immediately preceding his election."); NEV. CONST art. V, § 3 ("No person shall be eligible to the office of Governor, who is not a qualified elector, and who, at the time of such

And to our knowledge, whenever the constitutional term appears, it prescribes objective, *ex ante* prerequisites to running for office—not individualized, *ex post* grounds for disqualifying someone from appearing on a ballot.[9]

¶ 29 The Utah Constitution employs this specialized term in the same way. To be "eligible for the office of Governor," our constitution says that a person must be at least thirty years of age, a qualified voter, and a resident citizen of the state for at least the five preceding years. Utah Const. art. VII, § 3(1), (4). These general eligibility requirements say nothing about the grounds for qualifying to appear on a particular ballot for a particular election. Such grounds are set forth elsewhere—by statute—in provisions that speak in terms of qualification or disqualification for the ballot, not eligibility for the office.[10]

 ¶ 30 The election code must be read against that background. When it speaks to a person's *eligibility* for office, it is best understood to address general prerequisites to serve in an office, not individualized grounds for qualification or disqualification to

appear on the ballot. We read the Constitution and the election code *in pari materia*. They are addressed to the same subject matter and are thus presumed to use the term in the same manner.[11]

 ¶ 31 When the legislature "borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952). In other words, when a word or phrase is "transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." Felix Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum. L. Rev. 527, 537 (1947). The statutory notion of eligibility for office is a constitutional transplant, and we accordingly read it to carry its constitutional meaning.

 ¶ 32 This context forecloses Maxfield's notion of eligibility for office. The commission of an offense that *disqualifies* a

---

election, has not attained the age of twenty five years; and who shall not have been a citizen resident of this State for two years next preceding the election...."); Ohio Const. art. III, § 2 (provisions for "eligibility to hold the office of lieutenant governor"); Or. Const. art. V, § 2 ("No person except a citizen of the United States, shall be eligible to the Office of Governor, nor shall any person be eligible to that office who shall not have attained the age of thirty years, and who shall not have been three years next preceding his election, a resident within this State."); Va. Const. art. V, § 3 ("No person except a citizen of the United States shall be eligible to the office of Governor; nor shall any person be eligible to that office unless he shall have attained the age of thirty years and have been a resident of the Commonwealth and a registered voter in the Commonwealth for five years next preceding his election.").

9. As the previous footnote indicates, age, citizenship, and residency appear most frequently as the *ex ante* requirements for office.

10. *See* Utah Code § 20A–9–201 (candidate qualifications and declaration of candidacy requirements); *id.* § 20A–9–201(3)(a)(v) ("Before accepting a declaration of candidacy for the office of governor, lieutenant governor, state auditor, state treasurer, attorney general, state legislator,

or State Board of Education member, the filing officer shall ensure: (A) that the person filing the declaration of candidacy also files the financial disclosure required by Section 20A–11–1603; and (B) if the filing officer is not the lieutenant governor, that the financial disclosure is provided to the lieutenant governor according to the procedures and requirements of Section 20A–11–1603."); *id.* § 20A–9–201(3)(c)(ii) (instructing the filing officer to "provide the candidate with a copy of the current campaign financial disclosure laws for the office the candidate is seeking and inform the candidate that failure to comply will result in disqualification as a candidate and removal of the candidate's name from the ballot").

11. *Cf. Utah Cnty. v. Orem City,* 699 P.2d 707, 709 (Utah 1985) ("Statutes are considered to be in pari materia and thus must be construed together when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object. If it is natural or reasonable to think that the understanding of the legislature or of persons affected by the statute would be influenced by another statute, then those statutes should be construed to be in pari materia, construed with reference to one another and harmonized if possible." (citing 2A C. Sands, Sutherland Statutory Construction § 51.03, at 467–68 (4th ed.1984))).

person from appearing on the ballot does not render that person *ineligible* for the office. In context, *disqualification* refers to a specific election, and the consequence of disqualification is to "remove the name of the candidate from the ballot[ ]." UTAH CODE § 20A–11–206(1)(a)(i)(A)(I). Eligibility for office, in contrast, refers not to "ballots" or "votes," but to "the office." Eligibility requirements thus reside at a more fundamental level than qualification for an election ballot, and eligibility is independent of any specific election. In this term-of-art sense, Herbert's eligibility for the office of governor was unaffected by Maxfield's allegations of disqualifying campaign finance violations, and the district court was right to dismiss Maxfield's suit on that basis.

¶ 33 This conclusion is reinforced by the broad structure of the election code, which channels to the lieutenant governor's office claims challenging the qualification of a candidate to appear on a ballot. Under the election code, a claim alleging "that any provisions of [the election code] have been violated by any candidate" is to be asserted in a "verified petition" filed with the lieutenant governor. *Id.* § 20A–1–703(1). Upon receiving such a petition, the lieutenant governor is tasked with "gather[ing] information" to "determine if a special investigation is necessary." *Id.* § 20A–1–703(2)(a). If he deems an investigation necessary, "the lieutenant governor shall refer the information to the attorney general," who in turn is to conduct an investigation and may appoint special counsel to conduct a proceeding on behalf of the state. *Id.* § 20A–1–703(2)(b), (3). And if the attorney general grants leave for such a proceeding, the complaining voter "may, by a special proceeding brought in the district court in the name of the state upon the relation of the registered voter, investigate and determine whether or not the candidate . . . has violated any provision of [the election code]." *Id.* § 20A–1–703(4)(a).

■ ¶ 34 Special proceedings under section 703 are subject to statutorily prescribed procedural limitations, which differ in various respects from those that govern the election-contest proceeding under review in this case. *Id.* § 20A–1–703(4). A key difference is that

the lieutenant governor is the gatekeeper for special proceedings under section 703. There is no such gatekeeper in an election-contest proceeding under title 20A, chapter 4 of the Utah Code, which may be filed directly by a registered voter, *id.* § 20A–4–403(1).

■ ¶ 35 Maxfield would have us erase this and other distinctions between special proceedings under section 703 and election-contest proceedings under section 402. If we upheld Maxfield's right to assert campaign finance violations as grounds for challenging a candidate's eligibility for office, we would effectively override the detailed procedures governing section 703 proceedings alleging violations of the election code—including, most importantly, the provisions establishing the lieutenant governor's gatekeeping role in such proceedings. We decline to do so. The careful limitations on a section 703 proceeding confirm our conclusion that election-contest proceedings challenging a candidate's eligibility go to constitutional eligibility, and do not open the door to consideration of statutory violations that might ultimately call into question a candidate's qualification for the ballot. If a court is to "void" a candidate's election or "exclud[e] the candidate from office" on the basis of a violation of the election code, *id.* § 20A–1–704(1)(a)(i), (ii), our statutes channel such a proceeding through the lieutenant governor's office under section 703, which cannot be circumvented by an election contest proceeding under section 402.

¶ 36 Maxfield's construction of the election-contest statute also butts up against other provisions of the election code. Those provisions include one that authorizes "[a]ny candidate or voter [to] file a written complaint with the chief election officer alleging that a filed financial statement does not conform to law or to the truth," *id.* § 20A–11–1002(2), and another that vests in the lieutenant governor the authority to disqualify and remove a candidate from a ballot for failure to file statutorily-required financial statements, *id.* § 20A–11–206(1)(b). These provisions confirm the central role the lieutenant governor plays in assessing election code violations of the specific sort alleged by Maxfield in this suit. And they further undermine his at-

tempt to circumvent the lieutenant governor's role by filing an election-contest proceeding under section 402, which does not require his participation.

¶ 37 Finally, Utah Code section 20A–1–404 lends additional support to our interpretation. That section provides a method for resolving election controversies between candidates and election officers.[12] And it expressly authorizes the district court to order "strict compliance with all filing deadlines for financial disclosure reports," including "[c]ampaign" financial reports and "[p]olitical [a]ction [c]ommittee" financial reports. *Id.* § 20A–1–404(2)(b)(i)(C), (G). The specific reference to campaign finance controversies in section 20A–1–404 stands in bright contrast to the general terminology of eligibility for office in section 20A–4–402. In light of the legislature's careful and explicit regulation of campaign finance matters in this provision, we are reluctant to deem the general election contest provisions to cover the same subject matter.

¶ 38 For all these reasons, we agree with the district court's conclusion that an election controversy under Utah Code section 20A–4–402(1)(b) is not the proper forum for a candidate to allege violations of campaign finance disclosure laws. We accordingly affirm the court's decision on this issue.

## C

¶ 39 Finally, Maxfield attempts to shoehorn his allegations against Herbert into two other election-contest grounds. First, he asserts that Herbert's alleged campaign finance violations amount to an "offense against the elective franchise" under Utah Code section 20A–4–402(1)(c)(ii). He also invokes a catch-all provision in the election code, insisting that Herbert's alleged violations are sufficient to establish "any other cause that shows that another person was legally elected" under section 20A–4–402(1)(i).

¶ 40 The district court rejected both claims—the former in denying Maxfield's motion for a new hearing and the latter in granting Herbert's motion to dismiss. Maxfield challenges the rejection of his claims under Utah Code section 20A–4–403(4), which provides that the court in an election contest "may not reject any statement of the grounds of contest or dismiss the proceedings because of lack of form, if the grounds of the contest are alleged with such certainty as will advise the defendant of the particular proceeding or cause for which the election is contested."

¶ 41 We see no conflict between the cited provision and the decision of the district court. The district court nowhere stated that the petition was improperly pled or inartfully captioned or styled. The basis of the court's decision was not a technical defect in form or citation; it was that Maxfield's claims "must be pursued through the Attorney General's Office" under Utah Code section 20A–1–703. In the court's view, this is because *none* of the grounds specified in Utah Code section 20A–4–402 gave the district court "authority to conduct an inquiry into the alleged violations of the election laws."

¶ 42 And we agree with the district court. The conclusions we have drawn above, *supra* ¶¶ 32–37, regarding the structure of the statute, the role of the lieutenant governor in enforcing the election code, and the various avenues for resolving election disputes suggest that Maxfield's allegations of campaign finance violations may not be brought under any of the grounds for an election contest under Utah Code section 20A–4–402. Maxfield, moreover, gives us no basis for an alternative interpretation of any of the section 402 grounds as authorizing district courts to investigate campaign finance violations, and we decline to do so in the absence of a cogent argument.

## III

¶ 43 For the foregoing reasons we affirm the district court's dismissal of Maxfield's election-contest petition.

---

12. Utah Code § 20A–1–404 (1)(a)(i) ("Whenever any controversy occurs between any election officer or other person or entity charged with any duty or function under this title and any candidate, or the officers or representatives of any political party, or persons who have made nominations, either party to the controversy may file a verified petition with the district court.").

Justice LEE authored the opinion of the Court, in which Associate Chief Justice NEHRING, Justice DURHAM, Justice PARRISH, and Judge CHRISTIANSEN joined.

Having disqualified himself, Chief Justice DURRANT does not participate herein; Court of Appeals Judge MICHELE M. CHRISTIANSEN sat.