**2021 UT 71**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

HOLLY REBECCA ROSSER,
*Petitioner,*

*v.*

RONALD LEE ROSSER,
*Respondent.*

No. 20190320
Heard September 11, 2020
Filed December 23, 2021

On Certiorari to the Utah Court of Appeals

Sixth District, Panguitch
The Honorable Paul D. Lyman
No. 154600013

Attorneys:

Stephen D. Spencer, Murray, for petitioner

Steven W. Beckstrom, Nathanael J. Mitchell,
St. George, for respondent

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

### INTRODUCTION

¶1    In this divorce case, the district court held Respondent Ronald Rosser in contempt after finding that he had deliberately deceived Petitioner Holly Rosser.[1] However, the court of appeals

---

[1] Because the parties share the same last name, we use their given names with no disrespect intended by the apparent informality.

reversed, holding that Ronald's deceptive conduct did not amount to statutory contempt as a matter of law because it was directed at Holly rather than at the court. The court of appeals held that under subsection (4) of Utah Code section 78B-6-301 (the Contempt Statute), deceitful conduct during litigation does not rise to the level of contempt unless it is directed at the court.

¶2 Holly petitioned for certiorari, which we granted. The question before us is whether the court of appeals properly interpreted the meaning of "deceit" in subsection (4) of the Contempt Statute and whether it correctly applied the statute to the facts here.

¶3 We read subsection (4) of the Contempt Statute to be a bit broader. Under the plain language of the statute, deceitful conduct may be contemptuous not only when it is directed at the court, but when it is committed "in respect to a court *or its proceedings*." UTAH CODE § 78B-6-301 (emphasis added). However, we agree with the court of appeals that the district court's contempt order did not include sufficient findings of fact and conclusions of law to hold Ronald in contempt here. So we affirm the court of appeals' vacatur of most of the district court's order.

¶4 Accordingly, we reverse in part, affirm in part, and remand to the district court for further proceedings consistent with this opinion.

## BACKGROUND[2]

¶5 After over twenty-five years of marriage, Holly Rosser filed for divorce from her husband, Ronald Rosser. They disagreed on how to resolve certain financial aspects of their separation, including payment of an outstanding tax liability.

¶6 The Rossers eventually participated in mediation and entered into a written settlement agreement, which they signed on June 16, 2016 (Settlement Agreement). At the time of the mediation, the Rossers were aware that they owed $29,902.21 in unpaid taxes for 2015. In paragraph fifteen of the Settlement Agreement, the parties stipulated that they each would pay half of

---

[2] "On appeal from a bench trial, we view and recite the evidence in the light most favorable to the trial court's findings." *In re Adoption of B.H.*, 2020 UT 64, n.2, 474 P.3d 981 (citation omitted).

the outstanding tax liability. The Settlement Agreement stated, "IRS debt from 2015, 50% Ron and 50% Holly."

¶7   Soon after executing the Settlement Agreement, Holly paid her portion of the tax debt in the amount of $14,951.11. But Ronald did not.

¶8   Upon reviewing their 2015 tax filing, Ronald concluded that there were additional assets that could be depreciated to reduce the couple's overall tax liability. Ronald contacted Derrick Clark, the accountant who had prepared the couple's 2015 tax return, about amending the filing. Clark prepared an amended tax return dated July 16, 2016, which showed a reduction in the Rossers' tax liability of $7,900. It also showed a refund in the same amount, based on the assumption that the Rossers had paid the entire pre-existing tax debt.

¶9   The parties then filed in the district court a stipulated motion for entry of findings of fact, conclusions of law, and a final decree of divorce, which the district court signed and entered (Divorce Decree). The Divorce Decree contained a significant departure from the Settlement Agreement. Instead of dividing the 2015 income tax liability equally between the parties, it assigned the entire debt to Holly. It also stated that Holly would receive any refund resulting from the amended tax return. Paragraph 9(r) of the Divorce Decree read,

> With respect to the 2015 tax obligations owed by [Holly] and [Ronald], the Parties shall sign and file the amended tax returns for [their business] and themselves, individually, that were prepared by Derrick C. Clark on or about July 16, 2016. [Holly] shall pay all fees charged by Derrick C. Clark in connection with the preparation and filing of the amended tax returns. Thereafter, *[Holly] shall be solely entitled to receive any refund resulting from the amended returns, and shall also be responsible to pay any tax liabilities resulting to any of the Parties for the year 2015. . . .*

(Emphasis added.)

¶10   The Rossers executed and mailed the amended tax return. Two months later, Holly was surprised when, instead of a refund check, she received a notice from the IRS showing an outstanding tax debt of $7,174.98.

¶11 Holly moved the court for an order directed at Ronald to show cause why he should not be held in contempt and ordered to pay the tax liability apportioned to him under the Settlement Agreement. She asserted that Ronald's failure to do so was a violation of paragraph 9(r) of the Divorce Decree, because that paragraph was predicated on the assumption that both parties had fulfilled their obligation under the Settlement Agreement to pay their half of the tax liability. She also argued that Ronald "made fraudulent representations in connection with finalizing the stipulated decree of divorce." Ronald countered with his own motion for an order to show cause on a different issue.

¶12 The district court held a hearing on the dueling motions and ruled in favor of Holly, finding Ronald in contempt. Ronald responded with a number of motions attempting to undo the court's ruling and challenging its authority to hold him in contempt based on Holly's allegations.

¶13 Relevant here, Ronald argued that the court's ruling violated rule 10-1-602 of the Utah Code of Judicial Administration.[3] Ronald argued that the rule, which outlined the procedure for orders to show cause in the Sixth Judicial District, did not permit such proceedings to be used to obtain an original order or judgment. Rather, Ronald argued that such a proceeding may be used only to enforce an existing order—in this case, the Divorce Decree. And he asserted that since he had not violated any of the terms of the Divorce Decree, a contempt proceeding was improper.

¶14 The district court granted Ronald a new trial. After taking evidence, the court found that: (1) The Settlement Agreement "required both parties to immediately take various actions related to the businesses, properties, expenses and income"; (2) "Both parties did take immediate actions, which they both relied upon"; (3) Holly paid her half of the tax debt; (4) "The parties intended on June 16, 2016 to file an Amended 2015 tax return, which would result in [Holly] receiving a $7,900 tax refund, which would only happen if they each paid their share of the . . . $29,902.21 [tax debt]"; (5) "At no point did [Ronald] tell [Holly] that he had failed to pay his . . . tax obligation"; (6) "[Ronald] knew he would eventually be found out, but chose to let his deception go

---

[3] Rule 10-1-602 of the Utah Code of Judicial Administration was repealed on May 1, 2021.

forward"; (7) At the time the parties filed the stipulated motion to enter the Divorce Decree, only Ronald "knew he had failed to pay the obligation agreed to" in the Settlement Agreement; (8) "After listening to the parties at trial it was evident that [Ronald] knowingly and intentionally misl[ed] [Holly] about his failure to pay the taxes he agreed to pay . . ."; and (9) Ronald was "not telling the truth" with regard to a claim that he had met with Holly and she had agreed to pay the full tax debt.

¶15 Based on these findings, the court concluded that "[Ronald] is in contempt, due to his deliberate deceit and failure to act as agreed between the parties on June 16, 2016."[4] It awarded Holly $15,074.98 plus attorney fees and interest. The court did not identify the legal basis of its contempt ruling.

¶16 Ronald appealed. In his opening brief in the court of appeals, Ronald repeated his rule-based argument. He asserted again that local rule 10-1-602 (repealed May 1, 2021) limits motions for orders to show cause to enforcement of existing orders. And he reasoned that because he had not violated a provision of the Divorce Decree, which clearly assigned the tax liability to Holly, the district court's order finding him in contempt and requiring him to pay half of the tax debt violated the local rule.

¶17 He also argued that the exclusive means for Holly to pursue her allegations of fraud was through a motion under Utah Rule of Civil Procedure 60(b)(3), which permits relief from a judgment or order based on "fraud . . . misrepresentation or other misconduct of an opposing party." So it was error for the district court to consider the fraud allegation in a contempt proceeding.[5]

---

[4] The reference to the agreement between the parties on June 6, 2016 is a reference to the parties' Settlement Agreement. While Holly argued in her initial motion that Ronald had violated paragraph 9(r) of the Divorce Decree, the district court did not base its ruling on a violation of that document. Instead, the district court held Ronald in contempt due to his "deliberate deceit" and violation of the Settlement Agreement.

[5] Ronald also argued that Holly failed to establish her fraud claim by clear and convincing evidence and that the district court's fraud-related findings were inadequate.

¶18 In response to Ronald's procedural arguments, Holly argued that it was appropriate for the district court to sanction Ronald in the context of a contempt proceeding because Ronald's "conduct before the District Court fits within the statutory definition of 'contempt.'" She argued that Ronald had engaged in deception that was directed at her and at the district court. And, relevant here, she reasoned that the district court could find Ronald in contempt under subsection (4) of the Contempt Statute, which identifies "deceit, or abuse of the process or proceedings of the court," as contemptuous behavior.

¶19 Holly also disputed that she was required to raise her fraud allegations exclusively under rule 60(b)(3). She explained that she was not seeking to set aside the Divorce Decree, but to ask the district court to enforce the "correct meaning" of the Divorce Decree "based upon the written promises and representations of [Ronald], such as the [Settlement] Agreement and the amended tax return for 2015."[6] She argued there was "no procedural error in utilizing [r]ule 10-1-602 under the circumstances," because she was trying to enforce the Divorce Decree.

¶20 In his reply, Ronald disputed Holly's assertion that the district court's findings supported a determination of statutory contempt. He argued that the court's findings "only focus on elements of fraud in the traditional sense and not deceit in the judicial proceedings or with respect to the court." And he noted that contempt under subsection 301(4) only applies "in respect to a court or its proceedings." (Quoting UTAH CODE § 78B-6-301(4).)

¶21 In its opinion, the court of appeals observed that the district court had not identified the legal basis of its contempt determination. The court noted that Holly "asserts that the district court implicitly relied upon" two provisions of the Contempt Statute to justify its ruling: Subsection (4), "which allows a court to find a 'party to an action' in contempt for 'deceit, or abuse of the process or proceedings of the court,'" and subsection (5), "which allows a court to find a person in contempt for 'disobedience of any lawful judgment, order or process of the court.'" *Rosser v. Rosser*, 2019 UT App 25, ¶ 12, 438 P.3d 1047 (quoting UTAH CODE §§ 78B-6-301(4)–(5)).

---

[6] She also argued that the trial court's findings were sufficient.

¶22 The court of appeals rejected Holly's argument that Ronald's conduct constituted disobedience of a court order under subsection (5). *Id.* ¶ 17. The court reasoned that the Settlement Agreement was simply an agreement between the parties, which had not been endorsed by the court and was therefore not a court order. *Id.* ¶ 18. And it concluded that Holly had not successfully shown a violation of the Divorce Decree. *Id.* ¶ 20.

¶23 With respect to subsection (4), the court of appeals concluded that Ronald's deceitful conduct did not amount to contempt of court as contemplated by the statute. *Id.* ¶¶ 12–16. It reasoned that "the entire thrust of the subsection is aimed at allowing a court to penalize deceitful misuse of judicial proceedings by parties to those proceedings. Ronald's actions were all undertaken toward Holly, and not toward the court, and thus cannot fall within the ambit of subsection (4)." *Id.* ¶ 14. The court of appeals concluded, "Ronald did not commit deceit on the court, nor did he violate an order or judgment of the court." *Id.* ¶ 21. It vacated most of the contempt order and remanded for further proceedings. *Id.*

¶24 Holly petitioned for certiorari, which we granted. We exercise jurisdiction under Utah Code subsection 78A-3-102(3)(a).

## STANDARD OF REVIEW

¶25 Holly raises two issues on certiorari: first, she asserts that the court of appeals erred in addressing the issue of the proper interpretation of subsection (4) of the Contempt Statute because Ronald did not raise this issue in the district court or in his opening brief in the court of appeals; and second, she argues that the court of appeals erred in its construction and application of subsection (4) of the Contempt Statute.

¶26 "On certiorari, this court reviews the decision of the court of appeals for correctness, giving no deference to its conclusions of law." *In re Adoption of B.H.*, 2020 UT 64, ¶ 23, 474 P.3d 981 (citation omitted) (internal quotation marks omitted).

## ANALYSIS

¶27 We first address Holly's claim that the court of appeals should not have reached the merits of the proper interpretation of the Contempt Statute because this issue was both unpreserved and waived. Since we reject this argument, we go on to address the court of appeals' interpretation of the Contempt Statute and its holding that Ronald's deceitful conduct did not constitute contempt as a matter of law.

## I. PRESERVATION AND WAIVER

¶28 Holly contends that the legal argument on which Ronald prevailed in the court of appeals was both unpreserved and waived, and therefore the court of appeals should not have reached it. She asserts that Ronald did not argue in the district court that her allegations of deceit, even if true, did not amount to statutory contempt under subsection (4) of the Contempt Statute. And she contends that he then compounded this deficiency by not raising the argument in his opening brief on appeal. Ronald counters that he "consistently challenged the trial court's authority to hold him in contempt or grant the specific relief sought by Holly."

¶29 "Under our adversarial system, the parties have the duty to identify legal issues and bring arguments before an impartial tribunal to adjudicate their respective rights and obligations." *State v. Johnson*, 2017 UT 76, ¶ 14, 416 P.3d 443. For an issue to be preserved, it "must be specifically raised [by the party asserting error], in a timely manner, and must be supported by evidence and relevant legal authority." *Id.* ¶ 15 (alteration in original) (citation omitted) (internal quotation marks omitted). If a party fails to preserve an issue, "an appellate court will not typically reach that issue absent a valid exception to preservation." *Id.* Likewise, "[w]hen a party fails to raise and argue an issue on appeal, or raises it for the first time in a reply brief, that issue is waived and will typically not be addressed by the appellate court." *Id.* ¶ 16 (footnote omitted).

¶30 It is correct that Ronald did not make an argument about, or even mention, the Contempt Statute in the district court or in his opening brief in the court of appeals. But he is not alone in this. The district court also did not identify the relevant legal authority under which Ronald was to be held in contempt.

¶31 For Ronald's part, he seems to have simply opposed Holly's motion for an order to show cause on somewhat different grounds. He did not directly argue that Holly's allegations of deceit, even if true, did not constitute contempt under the Contempt Statute. Rather, he consistently argued that her allegations could not properly be adjudicated in a contempt

proceeding under local rule 10-1-602 because he had not violated a provision of the Divorce Decree.[7]

¶32 The district court did not address Ronald's rule-based argument in its order. Rather, it concluded that Ronald had been deceitful and was therefore in contempt—an apparent reference to subsection (4) of the Contempt Statute, although the court did not explicitly cite to it—without addressing whether it was appropriate to do so in a contempt proceeding under the local rule.

¶33 In the court of appeals, Ronald made the same rule-based argument in his opening brief. And he asserted that Holly's allegations of fraud could be considered only under rule 60(b)(3). In her response brief, Holly disputed Ronald's procedural contentions by referring to the Contempt Statute and the district court's statutory contempt authority. Ronald then responded to Holly's argument in his reply brief, providing a contrary interpretation of the Contempt Statute.

¶34 In light of this procedural history, we conclude that Holly's assertion that Ronald failed to preserve this issue is incorrect. Holly raised the Contempt Statute in her response brief on appeal to dispute the procedural argument that Ronald had consistently made in the district court and in his opening appellate brief. Ronald properly responded to this argument at the first possible time, in his reply brief. *See* UTAH R. APP. P. 24(b); *see also Brown v. Glover*, 2000 UT 89, ¶ 24, 16 P.3d 540 (explaining that "our appellate rules expressly direct an appellant to 'answer[] any new matter set forth in the opposing brief'" and when an

---

[7] At the time, rule 10-1-602 of the Utah Code of Judicial Administration (repealed May 1, 2021) stated in relevant part:

> Orders to show cause
>
> . . .
>
> (1) Motion. A party who seeks to *enforce an order or a judgment of a court against an opposing party* may file an ex parte motion for an order to show cause.
>
> . . .
>
> (7) Limitations. An *order* to show cause may not be requested in order to obtain an original order or judgment . . . .

(Emphases added).

appellant does so, "the issue is not waived" (alteration in original) (citation omitted)).

¶35 Accordingly, we conclude that it was not error for the court of appeals to address the meaning and application of the Contempt Statute. *See Brown*, 2000 UT 89, ¶ 25 (holding that it was error for the court of appeals to not reach an argument on the basis of waiver, when the appellant addressed in the reply brief a new argument raised in the appellee's response brief). The court was assessing Holly's answer to Ronald's procedural argument— an answer that it ultimately rejected.

## II.  INTERPRETATION OF THE CONTEMPT STATUTE

¶36 We now move to the next question before us—whether the court of appeals erred in its construction and application of subsection (4) of the Contempt Statute. As we explain below, we read this provision to reach not only deceit directed at a court, but more broadly deceit "in respect to a court or its proceedings."

¶37 As the court of appeals observed, the district court did not identify the legal basis of its contempt determination. The district court's order stated only that Ronald was "in contempt, due to his deliberate deceit and failure to act as agreed between the parties on June 16, 2016." *Rosser v. Rosser*, 2019 UT App 25, ¶ 11, 438 P.3d 1047.

¶38 A court's contempt ruling can be grounded in either its inherent or statutory contempt power. *See Chen v. Stewart*, 2005 UT 68, ¶ 36, 123 P.3d 416 ("A court's authority to sanction contemptuous conduct is both statutory and inherent."). A court's inherent contempt authority is "independent of statutory authority." *People ex rel. Pierce v. Carrington*, 17 P. 735, 737 (Utah 1888). These inherent contempt powers "are necessary to the proper discharge of [the court's] duties." *In re Evans*, 130 P. 217, 224 (Utah 1913).

¶39 Holly's argument in the court of appeals focused only on the district court's statutory contempt power. The Contempt Statute lists twelve "acts or omissions" that constitute contempt of court when done "in respect to a court or its proceedings." UTAH CODE § 78B-6-301. Holly "assert[ed] that the district court implicitly relied upon" two of those provisions: Subsection (4), "which allows a court to find a 'party to an action' in contempt for 'deceit, or abuse of the process or proceedings of the court,'" and subsection (5), "which allows a court to find a person in contempt for 'disobedience of any lawful judgment, order or process of the

court.'" *Rosser*, 2019 UT App 25, ¶ 12 (quoting UTAH CODE §§ 78B-6-301(4)–(5)).

¶40 The court of appeals rejected Holly's argument that Ronald's conduct amounted to disobedience of a court order under subsection (5). *Id.* ¶ 17. And she does not dispute that holding on certiorari.

¶41 So the only issue before us is Holly's challenge to the court of appeals' construction of subsection (4) of the Contempt Statute. That court held that even if Holly's allegations were true, Ronald's conduct would not be a violation of subsection (4) as a matter of law. The court of appeals focused on the meaning of "deceit" rather than "abuse of the process or proceedings of the court," because the district court's relevant finding mentioned only "Ronald's 'deliberate deceit' as part of its reason for holding Ronald in contempt of court." *Id.* ¶ 13. The court of appeals concluded that "subsection (4) . . . must be interpreted to include only deceit committed on the court." *Id.* And because the court of appeals deemed Ronald's actions to be "undertaken toward Holly, and not toward the court," it reasoned that Ronald's conduct "cannot fall within the ambit of subsection (4)." *Id.* ¶ 14.

¶42 When interpreting a statute, our aim is to "ascertain the intent of the legislature." *In re Adoption of B.H.*, 2020 UT 64, ¶ 31, 474 P.3d 981 (citation omitted). We start by looking at the plain language of the statute because it is "the best evidence of legislative intent." *Id.*

¶43 Subsection (4) of the Contempt Statute states in relevant part: "The following acts or omissions in respect to a court or its proceedings are contempts of the authority of the court: . . . deceit, or abuse of the process or proceedings of the court, by a party to an action or special proceeding . . . ." UTAH CODE § 78B-6-301(4). Accordingly, either "deceit" or "abuse of the process or proceedings of the court" constitute statutory contempt when committed by a party to an action and done "in respect to a court or its proceedings."

¶44 The only finding the district court made that falls within the parameters of the statute is that Ronald engaged in "deliberate deceit." So, like the court of appeals, we also focus on the meaning and scope of "deceit" as a form of statutory contempt.

¶45 Deceit is defined as "[t]he act of intentionally leading someone to believe something that is not true; an act designed to deceive or trick," or "[a] false statement of fact made by a person

knowingly or recklessly (i.e., not caring whether it is true or false) with the intent that someone else will act on it." *Deceit*, BLACK'S LAW DICTIONARY (11th ed. 2019). The district court appears to have found that Ronald had deceived Holly in both senses of the word, in that he intentionally led her to believe he had paid his half of the tax debt and he intended for her to rely on this falsehood in agreeing to the terms of the Divorce Decree.

¶46 The Contempt Statute reaches deceitful conduct that is either "in respect to a court *or its proceedings*." UTAH CODE § 78B-6-301 (emphasis added). The phrase "in respect to" means "[i]n reference or relation to; concerning." *Respect, Idioms: with/in respect to*, THE AM. HERITAGE DICTIONARY OF THE ENG. LANGUAGE (5th ed. 2011).

¶47 And "proceeding" is a broad term, defined as, among other things, "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." *Proceeding*, BLACK'S LAW DICTIONARY (11th ed. 2019). "Proceeding" is thus "more comprehensive than the word 'action,' but . . . may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action, including the pleadings and judgment." *Id.* (citation omitted).

¶48 We agree with the court of appeals' astute observation that contemptuous deceit must be more than "any untruthful statement made by any party to anyone while litigation is pending." *Rosser*, 2019 UT App 25, ¶ 16. But because the Contempt Statute also reaches deceit in connection with the proceedings of a court, the statute is not limited to deceit directed at a court. The other subsections of the Contempt Statute demonstrate this. Each of the twelve subsections identifies acts or omissions that constitute contempt of court when done "in respect to a court *or its proceedings*." UTAH CODE § 78B-6-301 (emphasis added).

¶49 To be sure, many of the subsections do clearly involve behavior directed at the court or occurring during a trial or hearing (for example: "insolent behavior toward [a] judge while holding the court," *id.* § 78B-6-301(1), or "boisterous conduct" interrupting a judicial proceeding, *id.* § 78B-6-301(2)). But others may not (for example: "violation of duty by an attorney," *id.* § 78B-6-301(3); acting as an attorney without authority, *id.* § 78B-6-301(6); or "when summoned as a juror," improperly

conversing "with any other person, concerning the merits of an action," *id.* § 78B-6-301(11)).

¶50 Contempt can also involve conduct directed at a third party. *See, e.g., id.* § 78B-6-301(8) (unlawfully detaining a witness). And contempt can involve conduct directed at another party to the proceeding or occurring outside the presence of the court where the conduct violates a court order.[8] *See, e.g., Von Hake v. Thomas*, 759 P.2d 1162, 1168 (Utah 1988) (defining "civil contempt" as having "a remedial purpose, either to coerce an individual to comply with a court order given for the benefit of another party or to compensate an aggrieved party for injuries resulting from the failure to comply with an order"). As the court of appeals observed in a divorce case in which it affirmed the district court's contempt order after a mother thwarted her ex-husband's visitation rights: "[The mother's] offense is not primarily an offense against the court, but against [the father], in whose behalf the mandate of the court was issued." *Kelly v. Draney*, 754 P.2d 92, 96 (Utah Ct. App. 1988).

¶51 With respect to subsection (4) in particular, the phrase found alongside "deceit"—"abuse of the process or proceedings of the court"—also contemplates contemptuous behavior that is not necessarily directed at the court. UTAH CODE § 78B-6-301(4). As the court of appeals correctly noted, "a word is given more precise content by the neighboring words with which it is associated."[9] *Rosser*, 2019 UT App 25, ¶ 14, (quoting *Thayer v. Washington Cnty. Sch. Dist.*, 2012 UT 31, ¶ 15, 285 P.3d 1142).

¶52 "'Abuse of process' occurs when a person uses a legal process . . . against another primarily to accomplish a purpose for which it is not designed." 1 AM. JUR. 2d *Abuse of Process* § 1 (2021). In this context, "'process' . . . is not limited to the original pleadings." *Id.* § 2. It can include "depositions, motions, interrogatories and other requests for discovery, or legal

---

[8] This conduct generally falls within subsection (5) of the Contempt Statute, designating "disobedience of any lawful judgment, order or process of the court" as contempt. UTAH CODE § 78B-6-301(5).

[9] This is an application of the canon of *noscitur a sociis*, which means "it is known from its associates." *Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 10 n.5, 284 P.3d 600.

maneuverings to compel or prohibit action by an opponent." *Id.* Thus, abuse of process involves conduct directed at an opposing party in litigation. It is contemptuous not because the conduct is directed at the court, but because it uses a legal process enabled by the court for an improper purpose. *Id.* §§ 1–2.

¶53 Accordingly, the Contempt Statute does not limit the type of deceit that may be deemed contemptuous "to include only deceit committed on the court." *Rosser*, 2019 UT App 25, ¶ 13. Contemptuous deceit is not limited to, for example, lying to a court under oath or filing false documents. *See id.* ¶ 15.

¶54 But the breadth of the term "proceedings" causes us to emphasize that contemptuous deceit must be more than "any untruthful statement made by any party to anyone while litigation is pending." *Id.* ¶ 16. To accurately interpret the scope of what is meant by deceit "in respect to a court or its proceedings," context is key. *See Dowling v. Bullen*, 2004 UT 50, ¶ 8, 94 P.3d 915 ("[S]ubsections of a statute should not be construed in a vacuum but must be read as part of the statute as a whole." (citation omitted)). We must view the language of subsection (4) within the overarching setting of "contempt[] of the authority of the court." UTAH CODE § 78B-6-301.

¶55 "Contempt of court" and "contempt," in this context, are established legal terms of art. Legal terms of art are "specialized legal terms that carry an extra-ordinary meaning." *State v. Canton*, 2013 UT 44, ¶ 28, 308 P.3d 517. When invoked by the legislature, we give such terms of art their "extra-ordinary meaning" rather than the "common understanding of the words." *Id.*; *see also Maxfield v. Herbert*, 2012 UT 44, ¶ 31, 284 P.3d 647 ("[W]hen a word or phrase is transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." (citation omitted) (internal quotation marks omitted)).

¶56 Contempt is "[c]onduct that defies the authority or dignity of a court." *Contempt*, BLACK'S LAW DICTIONARY (11th ed. 2019). "In the context of judicial proceedings, it is conduct that undermines a court's authority, . . . or that is calculated to impede, embarrass, or obstruct the court in its administration of justice . . . ." 17 C.J.S. *Contempt* § 1 (2021); *see also id.* § 3 ("[Contempt of court includes] any act related to a current or pending judicial proceeding which tends to deter the court from the performance of its duties, as by any act manifesting a disrespect and defiance of a court.").

¶57 Deceit in connection with judicial proceedings that does not fall within the parameters of what is generally considered to be contemptuous behavior would fall outside the statute. In other words, the deceit must somehow undermine the authority of the court, misuse the authority or proceedings of the court, or hamper the administration of justice.[10]

¶58 The court of appeals' holding that deceit is contemptuous only when it is directed at the court may be descriptively accurate, in that contemptuous deceit seems to most often take this form. *See, e.g., Bhongir v. Mantha*, 2016 UT App 99, ¶ 16, 374 P.3d 33 (concluding it is contemptuous deceit to lie to a court under oath); *PacifiCorp v. Cardon*, 2016 UT App 20, ¶ 3, 366 P.3d 1226 (concluding it is contemptuous deceit to file false documents). But the statute leaves room for those rare instances when deceit that is not directed at the court, but is related to court proceedings, undermines the authority of the court, misuses the authority or proceedings of the court, or hampers the administration of justice. For example, in a Michigan case, a lawyer told opposing counsel that he was running late for a scheduled court hearing and had notified the trial court. *In re Black*, No. 285330, 2009 WL 3014938, at *1 (Mich. Ct. App. Sept. 22, 2009) (per curiam). This was false, and opposing counsel arrived late to the hearing. *Id.* When the court ascertained that the lawyer had lied, causing opposing counsel to be late and delaying the court's calendar, the court held the deceitful attorney in contempt. *Id.* at *1–2 (finding the lawyer in contempt both for "deliberately lying to [the] court regarding his contact with [opposing counsel]" and for "willfully violat[ing] his duty imposed by the . . . Rules of Professional Conduct in his . . . dealing with third persons and opposing counsel . . . and as a result tr[ying] to improperly manipulate [the] court['s] scheduling" (sixth alteration in original)). And the Michigan court

_____

[10] Holly asks us to interpret the word "deceit" within the Contempt Statute as being equivalent to the doctrine of fraud on the court. But her argument is not grounded in principles of statutory interpretation. When construing a statute, we do not import meaning from another source unless a word or phrase from that other source is actually used in the statute. *See Maxfield v. Herbert*, 2012 UT 44, ¶ 31, 284 P.3d 647. As "fraud on the court" appears nowhere in the statute, we decline Holly's invitation to import it.

of appeals affirmed. *Id.* at \*3–4 (holding that under Michigan law, "a person may be held in contempt for actions that do not necessarily violate a court order.").

¶59 Our review of contempt jurisprudence indicates that there are few cases involving contemptuous deceit that was *not* directed at the court. And Holly acknowledges that she has not found any case that is "on all fours" with the circumstances here. So instances of this type of deceit falling within the Contempt Statute will likely be a rarity. And applying subsection (4) to the facts here, we agree with the court of appeals that the district court did not make sufficient factual findings or legal conclusions to explain why this is one of those rare cases. The court found only that Ronald had engaged in "deliberate deceit." It did not make findings as to how his deceit was "in respect to the court or its proceedings." And it did not make any legal conclusions as to why his conduct fell within the Contempt Statute. Accordingly, although we take a slightly more expansive view of the Contempt Statute, we affirm the court of appeals' vacatur of "nearly the entirety" of the district court's order.[11]

¶60 Because we have interpreted subsection (4) of the Contempt Statute as a matter of first impression, we remand the case to the district court for further proceedings. Specifically, the district court should determine whether Ronald's deceitful conduct constitutes contempt of court under subsection (4). If so, the court should make sufficient findings of fact and conclusions of law, consistent with this opinion. The district court may decide it is necessary to take additional evidence, but that is solely in the court's discretion.

## CONCLUSION

¶61 The court of appeals correctly reached the interpretation and application of the Contempt Statute in this case. However, while the court of appeals read subsection (4) of that statute to reach only deceit directed at the court, we read it a bit more broadly to also include deceit in respect to a court's *proceedings*. This does not include every instance in which a party or attorney

---

[11] While the court of appeals vacated "nearly the entirety" of the district court's order, it left intact paragraphs 20 to 22. *Rosser v. Rosser*, 2019 UT App 25, ¶ 21 n.8, 438 P.3d 1047. We agree with that decision.

is deceitful during litigation. Rather, to be contemptuous, deceitful conduct in respect to court proceedings must fall within the boundaries of what is generally considered to be contemptuous behavior, in that it undermines the authority of the court, misuses the authority or proceedings of the court, or hampers the administration of justice in some way.

¶62 We affirm the court of appeals' vacatur of most of the district court's contempt order. And we remand to the district court for further proceedings consistent with this opinion.

————————